UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN - SOUTHERN DIVISION

JANE DOE KJ,

      Plaintiff,

v.

MICHIGAN STATE UNIVERSITY; THE BOARD OF
TRUSTEES OF MICHIGAN STATE UNIVERSITY;
LAWRENCE GERARD NASSAR (individual
capacity); USA GYMNASTICS, INC.; KATHIE
KLAGES (individual capacity); WILLIAM D.
STRAMPEL (individual capacity); JEFFREY R.
KOVAN (individual and official capacity); GARY
STOLLAK (individual capacity); DOUGLAS
DIETZEL (individual and official capacity);
BROOKE LEMMEN, D.O., (individual capacity);
DESTINY TEACHNOR-HAUK (individual
capacity); KRISTINE MOORE (individual
capacity);

      Defendants.

Case No.

Hon.

---

DONNA M. MACKENZIE (P62979)
EMILY G. THOMAS (P76638)
OLSMAN, MACKENZIE, PEACOCK &
WALLACE, P.C.
Attorneys for Plaintiff
2684 West Eleven Mile Rd.
Berkley, MI 48072
(248) 591-2300 / 248-591-2304 [fax]
dmackenzie@olsmanlaw.com
ethomas@olsmanlaw.com

---

## COMPLAINT AND JURY DEMAND

NOW COME Plaintiff, by and through their attorneys, OLSMAN MACKENZIE PEACOCK

& WALLACE, P.C., and for their Complaint against the above-named Defendants, Michigan

State University (hereinafter *"Defendant MSU"*), the Board of Trustees of Michigan State

University, Kathie Klages, William D. Strampel, Jeffrey R. Kovan, D.O., Douglas Dietzel, D.O., BROOKE LEMMEN, D.O., Gary E. Stollak, Kristine Moore, Destiny Teachnor-Hauk (hereinafter with Defendant MSU collectively referred to as *"MSU Defendants"*), Lawrence Gerard Nassar (hereinafter *"Defendant Nassar"*), and United States of America Gymnastics, Inc. (hereinafter *"Defendant USAG"*), states as follows:

## INTRODUCTORY STATEMENTS

1.      This is a civil action for declaratory, injunctive, equitable, and monetary relief for injuries sustained by Plaintiff as a result of acts and omissions of Defendant MSU, Defendant The Board of Trustees of Michigan State University, Defendant Nassar, and Defendant USAG, and their respective employees, agents, and/or representatives, relating to sexual assault, battery, molestation, harassment, and discrimination by Defendant Nassar against Plaintiff.

2.      At all times pertinent hereto, Defendant Nassar was retained by Defendant MSU and Defendant USAG to provide medical care, treatment, and advice to Michigan State University athletes and members of the general public. Defendant Nassar regularly provided such medical care, treatment, and advice at Defendant MSU's training department, MSU and Sports Medicine Clinic.

3.      Defendant Nassar came highly recommended to Plaintiff as a renowned orthopedic sports medicine physician, purportedly well-respected in the sports medicine community, specifically in the gymnastics community as the Team Physician for the United States Gymnastics team.

4.      Upon information and belief, Defendant Nassar used his position of trust and confidence to regularly and systematically sexually assault, batter, molest, and harass female

patients over the entire course of his career in his capacity as an employee, agent, and/or representative of Defendants MSU, and USAG, for his own personal self-gratification.

5.     Despite being informed of Defendant Nassar's sexual assault, battery, molestation, and harassment, Defendants MSU, and USAG failed to take appropriate action to prevent Defendant Nassar from sexually molesting, abusing, and harassing his patients over the course of his career in his capacity as an employee, agent, and/or representative of Defendants MSU, and USAG.

## JURISDICTION

6.     Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

7.     This action is brought pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. 1681 *et seq.*, as more fully set forth herein.

8.     This action also seeks to redress the deprivation of Plaintiff's rights secured by the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

9.     This Court has subject matter jurisdiction over this action pursuant to Title 28 U.S.C. § 1331 in that the controversy arises under the Constitution, laws, and treaties of the United States.

10.     Subject matter jurisdiction is also founded upon 28 U.S.C. § 1343 which grants district courts original jurisdiction over any civil action authorized by law to be commenced by any person to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all

persons within the jurisdiction of the United States; or any action to recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

11.     Subject matter jurisdiction is also founded upon 28 U.S.C. § 1332 as it relates to Plaintiff's claims against Defendant USAG for the reason that 28 U.S.C. § 1332 grants subject matter jurisdiction over civil actions involving citizens of different states where the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

12.     Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a) to hear and decide claims arising under state law that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

13.     Plaintiff's claims are cognizable under the United States Constitution, 42 U.S.C. § 1983, 20 U.S.C. § 1681, *et seq.,* and under Michigan law.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims arose in this judicial district, in Ingham County, Michigan.

15.     Plaintiff has filed the appropriate Notice of Intent to File Claim with the Michigan Court of Claims pursuant to MCL 600.6431

**PARTIES**

16.     Plaintiff incorporate by reference the allegations contained in the previous paragraphs.

17.     Plaintiff JANE DOE KJ is a resident of the State of Indiana. She was a minor

-4-

during the time she was sexually assaulted, abused and molested by Defendant Nassar.

18.     Defendant Nassar was a Doctor of Osteopathic Medicine and was a resident of Ingham County, Michigan, and is now incarcerated.

19.     Defendant Michigan State University is and was, at all times pertinent hereto, a state-owned and operated public university and institution of higher education organized and existing under laws of the State of Michigan.

20.     Michigan State University receives federal financial assistance and is therefore subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681 *et seq*.

21.     Defendant The Board of Trustees of Michigan State University is the governing body for Michigan State University.

22.     Lou Anna K. Simon is the immediate past President of Defendant MSU, serving from approximately January 2005 - 2018.

23.     M. Peter McPherson is a past President of Defendant MSU and served as President from approximately 1993 - 2004.

24.     Defendant William D. Strampel, D.O. (hereinafter *"Defendant Strampel"*) was the Dean of the College of Osteopathic Medicine at Defendant MSU, serving as Dean from approximately 2002-2017.

25.     Defendant Jeffrey R. Kovan, D.O. (hereinafter *"Defendant Kovan"*), is or was the Director of Division of Sports Medicine at Defendant MSU.

26.     Defendant Douglas Dietzel, D.O. (hereinafter *"Defendant Dietzel"*), is the Clinical Director of MSU Sports Medicine and Team Orthopedic Surgeon for MSU Department of Intercollegiate Athletics serving as Clinical Director of MSU Sports Medicine since approximately 2004.

27.    Defendant Brooke Lemmen, D.O. (hereinafter *"Defendant Lemmen"*), is or was a practicing physician with MSU Sports Medicine from approximately 2010 to 2017.

28.    Defendant Kathie Klages (hereinafter *"Defendant Klages"*) was the head coach of the Michigan State University Gymnastics Program until her suspension and resignation in early 2017; she also conducted gymnastics classes and programs for children and young adults not on the varsity gymnastics team.

29.    Defendant Destiny Teachnor-Hauk (hereinafter *"Defendant Teachnor-Hauk"*) is or was an athletic trainer for Defendant MSU for various sports including, but not limited to, softball, track and field, gymnastics, rowing, and volleyball.

30.    Defendant Teachnor-Hauk regularly referred MSU student athletes to Defendant Nassar for medical treatment.

31.    Defendant Gary E. Stollak (hereinafter *"Defendant Stollak"*) was a professor in the clinical program within the Michigan State University Department of Psychology.

32.    Defendant Kristine M. Moore (hereinafter *"Defendant Moore"*) served as the Assistant Director for Institutional Equity Office for Inclusion and Intercultural Initiatives in 2014. Following the incident that is the subject of this civil action, Defendant Moore began serving as, and remains at this time, Assistant General Counsel at Michigan State University.

33.    Defendant USAG was and continues to be an organization incorporated in Indiana, authorized to conduct business and conducting business throughout the United States including, but not limited to, the State of Michigan.

34.    Steve Penny was the president of Defendant USAG from approximately April 2005 to March 2017, who was responsible for the overall management and strategic planning of Defendant USAG.

35.     Robert Colarossi is the past president of Defendant USAG and held the position from approximately 1998 to 2005 and during that time was responsible for the overall management and strategic planning of Defendant USAG.

36.     Defendant USAG requires member clubs to pay it a fee in order to hold Defendant USAG sanctioned events.

37.     Defendant USAG also issues rules and requirements for its member clubs and exercises some degree of control over its member clubs because Defendant USAG has the authority to revoke a club's membership.

38.     Defendant USAG also requires all coaches, judges, and athletes to pay it a membership fee if they want to participate in USA Gymnastics sanctioned events.

**GENERAL ALLEGATIONS**

39.     Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

40.     At all times pertinent hereto, Defendant Nassar maintained an office at Defendant MSU in East Lansing, Michigan.

41.     At all times pertinent hereto, including the years 1996 to 2016, Defendant Nassar was an employee, representative, and/or agent of Defendant MSU acting under their control and supervision.

42.     At all times pertinent hereto, including the years 1996 to 2015, Defendant Nassar was an employee, representative, and/or agent of Defendant USAG acting under their control and supervision.

43.     At all times pertinent hereto, including the years 1996 to 2016, Defendant Nassar was acting in the scope of his employment or agency with Defendant MSU.

-7-

44.     At all times pertinent hereto, including the years 1996 to 2015, Defendant Nassar was acting in the scope of his employment or agency with Defendant USAG.

45.     At all times pertinent hereto, the MSU Defendants and Defendant Nassar were acting under color of law, including acting under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant MSU.

46.     Defendant Nassar graduated with a Doctor of Osteopathic Medicine degree from Defendant MSU in approximately 1993.

47.     Defendant Nassar was employed by, and/or an agent of, Defendant USAG from approximately 1986 to 2015, serving in various positions, including, but not limited to: (a) Certified Athletic Trainer; (b) Osteopathic Physician; (c) National Medical Doctor; (d) National Team Physician for USA Gymnastics; and (e) National Team Physician for USA Gymnastics' Women's Artistic Gymnastics National Team.

48.     Defendant Nassar received a benefit from his relationship with Defendant USAG in the form of national and global exposure, fame, and increased patients at his office at MSU, which resulted in Defendant Nassar receiving higher compensation.

49.     Defendant USAG received a benefit from its relationship with Defendant Nassar in the form of medical services rendered to its member athletes, national and global exposure, fame, and increased enrollment.

50.     Defendant Nassar was employed by, and/or an agent of, Defendant MSU from approximately 1996 to 2016, serving in various positions, including, but not limited to: (a) Associate Professor of Defendant MSU's Division of Sports Medicine, Department of Radiology, College of Osteopathic Medicine; (b) Team Physician of Defendant MSU's Men's and Women's Gymnastics Teams; (c) Team Physician of Defendant MSU's Men's and

Women's Track and Field Teams; (d) Team Physician of Defendant MSU's Men's and Women's Crew Teams; (e) Team Physician of Defendant MSU's Intercollegiate Athletics; (f) Medical Consultant with Defendant MSU's Wharton Center for the Performing Arts; and (g) Advisor for Student Osteopathic Association of Sports Medicine.

51.    As part of Defendant Nassar's employment and contractual duties with MSU, Defendant Nassar was responsible for spending between 50 to 70% of his time engaged in "Outreach" and/or "Public Services."

52.    A part of Defendant Nassar's outreach included providing medical treatment to athletes affiliated with Defendant USAG as well as other organizations such as Holt High School and Twistars USA, Inc. d/b/a Gedderts' Twistars Gymnastics Club USA.

53.    Based on MSU's decision to compensate Nassar for his work with USAG, Nassar was acting in the scope of his employment with MSU while he was working at USAG and also while he was working with athletes from that organization.

54.    Defendant Nassar regularly provided services and treatment to Defendant USAG's members.

55.    As a physician of osteopathic medicine, Defendant Nassar's medical care and treatment should have consisted largely of osteopathic adjustments and kinesiology treatment to patients, including students and student athletes of Defendant MSU.

56.    Defendant Nassar is not and has never been a medical doctor of obstetrics or gynecology.

57.    While employed by Defendants MSU and USAG, Defendant Nassar practiced medicine at Defendant MSU's Sports Medicine Clinic, a facility at MSU.

58.    While employed by Defendant MSU and Defendant USAG, Defendant Nassar

sexually assaulted, abused, and molested numerous female patients by engaging in nonconsensual sexual assault, battery, molestation, and harassment, including, but not limited to, digital vaginal and anal penetration without the use of gloves or lubricant.

59.     The use of gloves when exposed to potentially infectious material, including vaginal secretion, is mandated by the Michigan's Administrative Code R.325.70001 et seq.

60.     As early as 1997 and/or 1998, employees, representatives, and agents of Defendant MSU were made aware of Defendant Nassar's conduct, yet failed to appropriately respond to allegations, resulting in the sexual assault, battery, molestation, and harassment of Plaintiff and other female patients through approximately 2016.

61.     Upon information and belief, Defendant MSU and Kathie Klages were expressly notified by a minor female athlete, Larissa Boyce, in 1997 and/or 1998, while under the instruction of Kathie Klages and MSU Youth Gymnastics, that Defendant Nassar sexual assaulted, battered, molested, and harassed Larissa Boyce on multiple occasions.

62.     Upon information and belief, after receiving Larissa Boyce's complaint, Katie Klages told Larissa Boyce that she must be "misunderstanding" or "reading into" what Defendant Nassar was doing. Kathie Klages convinced Larissa Boyce not to file a formal complaint by explaining that it would have serious consequences for Larissa Boyce and Defendant Nassar.

63.     As a result of MSU gymnastics head coach Kathie Klages being informed by Larissa Boyce of Defendant Nassar's conduct, Jane B8 Doe was asked by Klages if Nassar had performed the "procedure" involving digital vaginal and anal penetration on Jane B8 Doe, and Jane B8 Doe responded in the affirmative. Klages told Jane B8 Doe that there is no reason to bring up Nassar's conduct.

64.     Despite her complaints to Defendant MSU employees, agents, and/or representatives, including Kathie Klages, Larissa Boyce's concerns and allegations went unaddressed in violation of reporting policies and procedures and Title IX and in a manner that was reckless, deliberately indifferent, and grossly negligent.

65.     In or around 1999 the MSU Defendants were also put on notice of Defendant Nassar's conduct by an MSU student and track and cross-country athlete, Christie Achenbach, after she complained to MSU employees, including trainers and her head coach, Kelli Bert, that Defendant Nassar touched her vaginal area although she was seeking treatment for an injured hamstring.

66.     Despite her complaints to Defendant MSU's employees, agents, and/or representatives, including trainers and head coaches, Christie Achenbach's concerns and allegations went unaddressed in violation of reporting policies and procedures and Title IX and in a manner that was reckless, deliberately indifferent, and grossly negligent.

67.     Upon information and belief, Defendant MSU was notified in 2000 that Defendant Nassar committed acts of sexual assault, battery, molestation, and harassment when a student athlete, Tiffany Thomas Lopez, reported to MSU employees, agents, and/or representatives, including the highest-ranking employees within MSU's Training Staff, that Defendant Nassar touched her vaginal area on multiple occasions and inserted his ungloved hand into her vagina, although she was seeking treatment for back pain.

68.     Upon information and belief, an employee, agent, and/or representative of Defendant MSU, who was one of three individuals that supervised the training department, told Tiffany Thomas Lopez that what happened to her was not sexual abuse, that Defendant Nassar was a world-renowned doctor, that she was not to discuss what happened, and that

she was to continue seeing Defendant Nassar for purported treatment.

69.   One of the trainers that Ms. Lopez reported to was Lianna Hadden, who is still presently employed by MSU as an athletic trainer with the volleyball team.

70.   After reporting the assault to Ms. Hadden, Ms. Lopez also reported the assault to Destiny Teachnor-Hauk.

71.   Ms. Lopez told Teachnor-Hauk that she was "extremely uncomfortable," but Teachnor-Hauk told Ms. Lopez that Nassar was engaged in actual medical treatment.

72.   Teachnor-Hauk further dissuaded Ms. Lopez from reporting Nassar's conduct further by telling Ms. Lopez that if Lopez pursued the matter further that it would cast a burden over her family and cause Ms. Lopez a lot of heartache and trauma.

73.   Teachnor-Hauk also defended Nassar by stating to Ms. Lopez by asking why she would want to drag Nassar through an allegation of sexual assault.

74.   Despite her complaints to Defendant MSU employees, agents, and/or representatives, including the highest-ranking employees within MSU's Training Staff, Tiffany Thomas Lopez's concerns and allegations went unaddressed in violation of reporting policies and procedures and Title IX and in a manner that was reckless, deliberately indifferent, and grossly negligent.

75.   Upon information and belief, Defendant MSU was notified in approximately 2001 or 2002 that Defendant Nassar committed acts of sexual assault, battery, molestation, and harassment when Jennifer Rood Bedford, an MSU student athlete on the women's volleyball team, was sexually assaulted and abused during "treatment" by Defendant Nassar and reported Defendant Nassar's conduct to Defendant MSU's employees, including MSU athletic trainer Lianna Hadden.

-12-

76. According to Ms. Bedford, Nassar was known among the women's volleyball team as the "crotch doc" because of his "unconventional methods" of treating sports injuries with vaginal penetrations.

77. Ms. Hadden dissuaded Ms. Bedford from filing a formal complaint against Nassar because it would result in an investigation against Nassar, making an accusation against Nassar and statement that she felt that what Nassar did was unprofessional or criminally wrong.

78. Upon information and belief, Defendant MSU was notified in approximately 2004 that Defendant Nassar committed acts of sexual assault, battery, molestation, and harassment when Kyle Stephens–then 11 or 12 years old–was sexually assaulted and abused during "treatment" by Defendant Nassar and reported Defendant Nassar's conduct to Defendant MSU's employees, including Defendant Gary E. Stollak.

79. Defendant Stollak did not report the abuse to law enforcement or to child protective services.

80. Instead, Defendant Stollak suggested that Ms. Stephens and her parents meet with Nassar.

81. Ms. Stephens refused to attend the meeting, but her parents met with Defendant Stollak and Defendant Nassar.

82. Also in 2004, a 16-year-old woman, Brianne Randall-Gay, reported Defendant Nassar's conduct to her parents and to the Meridian Township Police Department in Meridian Township, Michigan in 2004.

83. The employees, agents, and/or representatives of Defendant MSU, including MSU trainers, coaches, Katie Klages, Lianna Hadden, and Gary Stollak, had a duty to report

allegations of Defendant Nassar's inappropriate sexual conduct directed at Larissa Boyce, Christie Achenbach, Tiffany Thomas Lopez, Jennifer Rood Bedford, and Kyle Stephens.

84.     Because MSU took no action to investigate the 1997/1998, 1999, 2000, 2001/2002, and 2004 complaints and took no corrective action, from 1997 and/or 1998 to 2016, under the guise of treatment, several individuals, including Plaintiff, were sexually assaulted, abused, molested, and harassed by Defendant Nassar by vaginal digital penetration, without the use of gloves or lubricant and by touching and groping their breasts.

85.     Defendant MSU's deliberate indifference before, during, and after the sexual assault, battery, molestation, and harassment of Plaintiff was in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.,* 42 U.S.C. § 1983, as well as other federal and state laws.

86.     Defendant MSU's failure to comply with Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*, 42 U.S.C. 1983, and other federal and state laws, as describe herein this Complaint, contributed to the creation of a sexually hostile environment on MSU's campus between 1997 and 2018.

87.     In 2014, following receipt of an unrelated complaint regarding a sexual assault on Defendant MSU's campus, between 2014 and 2015, the U.S. Department of Education's Office of Civil Rights (hereinafter "OCR") conducted an investigation regarding the complainant's allegations, another complaint regarding sexual assault and retaliation from 2011, and Defendant MSU's response to said complaints, and their general policies, practices, and customs pertaining to their responsibilities under Title IX.

88.     The OCR concluded their investigation in 2015 and presented Defendant MSU with a twenty-one-page agreement containing measures and requirements to resolve the

2011 and 2014 complaints and to bring Defendant MSU in compliance with Title IX.

89.     The report confirmed that the *"OCR determined that the University's Title IX grievance procedures, in place during the time period covered by OCR's investigation, failed to comply with the requirements of Title IX."*

90.     The report further confirmed that the *"OCR determined that a sexually hostile environment existed for and affected numerous students and staff on campus at the University during the time period covered by OCR's investigation; and that the University's failure to address complaints of sexual harassment, including sexual violence, in a prompt and equitable manner caused and may have contributed to a continuation of this sexually hostile environment."*

91.     While the OCR was conducting their investigation, additional complaints regarding Defendant Nassar's conduct surfaced in 2014. Amanda Thomashow reported she had an appointment with Defendant Nassar to address hip pain and was sexually abused and molested by Defendant Nassar when he cupped her buttocks, massaged her breast and vaginal area, and he became sexually aroused.

92.     Upon information and belief, Defendant MSU investigated the 2014 complaints through their Office of Institutional Equity.

93.     However, Amanda Thomashow reported to Defendant MSU facts which were omitted or withheld from the investigative report including but not limited to the following:

    a.      Defendant Nassar was sexually aroused while touching her;

    b.      The appointment with Defendant Nassar did not end until Amanda Thomashow physically removed his hands from her body.

94.     Three months after initiating the investigation, in July 2014, Amanda

Thomashow's complaints were dismissed and Defendant MSU determined she didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure and deemed Defendant Nassar's conduct "medically appropriate" and "[n]ot of a sexual nature."

95.     Two of the medical experts consulted by the Office of Institutional Equity in investigating the victim's allegations were Defendants Lemmen and Teachnor-Hauk.

96.     Following the investigation, on or about July 30, 2014, Defendant Strampel sent an e-mail to Defendant Nassar that provided new institutional guidelines and restrictions that Defendant Nassar was subject to including:

    a.    Defendant Nassar was not to examine or treat patients alone but was to be accompanied by a chaperone such as a resident or nurse;

    b.    The alleged "procedure" was to be altered to ensure there would be little to no skin to skin contact when in certain "regions" and if skin to skin contact was "absolutely necessary" the "procedure" was to be explained in detail with another person in the room for both the explanation and the "procedure;" and,

    c.    New people in the practice were to be "oriented" to ensure understanding with the guidelines.

97.     Defendant Strampel sent a copy of the July 30, 2014 e-mail that outlined Defendant Nassar's restrictions and guidelines to Defendant Dietzel.

98.     At all relevant times, Defendant Dietzel, Defendant Strampel, and Defendant Kovan were acting in a supervisory role to Defendant Nassar.

99.     The MSU Defendants failed to take any actions to enforce or ensure that Defendant Nassar was in compliance with the restrictions outlined by Defendant Strampel in his July 30, 2014 e-mail to Defendant Nassar.

100.    Upon information and belief, the MSU Defendants failed to take any action to

orient new MSU employees to ensure that they were aware of the restrictions placed on Nassar.

101.    In approximately March 2016, Diane Rork was an employee of MSU serving as a registered medical assistant.

102.    Through her employment with MSU, Diane Rork had occasion to work with patients who were to be seen by Defendant Nassar.

103.    At no point in time was Diane Rork ever told of any restrictions or guidelines regarding Defendant Nassar's treatment of patients.

104.    On one occasion in March 2016, Diane Rork was completing a chart of a girl younger than 13 who was set to be examined by Defendant Nassar in an exam room at Defendant MSU's Sports Medicine Clinic.

105.    Defendant Nassar ordered Diane Rork to leave the room so that he could "treat" the young girl alone.

106.    Diane Rork reported her March 2016 interaction with Defendant Nassar to the MSU Police Department in January 2017.

107.    MSU terminated Diane Rork's employment approximately two weeks later.

108.    In addition, an unnamed registered nurse employed by MSU at the MSU Sports Medicine from approximately 2015 to 2016, has indicated that she was never made aware of any restrictions or guidelines concerning Defendant Nassar.

109.    This unnamed registered nurse was the only registered nurse employed by Defendant MSU's Sports Medicine Clinic during the time of her employment.

110.    From July 2014 to September 2016, despite complaints about Defendant Nassar's conduct and an open criminal investigation into Defendant Nassar's conduct,

Defendant MSU continued to permit Defendant Nassar unfettered access to female athletes without adequate oversight or supervision to ensure he was complying with the new guidelines.

111. In a March 14, 2017 interview with Michigan State University Police Department Detective Sergeant Christopher Rozman, Defendant Strampel admitted that the institutional restrictions and guidelines that Defendant Nassar was subject to were illusory in nature because he only shared them with Defendant Dietzel and took no action whatsoever to ensure that the institutional restrictions and guidelines were implemented, followed, or enforced.

112. Defendant Strampel also told Detective Sergeant Rozman that he did not want any other employees in the Sports Medicine Clinic to know that Defendant Nassar had been accused of sexual assault or that Nassar was subject to institutional restrictions or guidelines.

113. Defendant Strampel also admitted to Detective Sergeant Rozman that he did not take any steps to orient any new employees at Defendant MSU's Sports Medicine Clinic to the institutional restrictions or guidelines that Defendant Nassar was purportedly subject to until after Defendant Nassar's termination.

114. In a March 15, 2017 interview with Michigan State University Police Department Detective Lieutenant Andrea Munford, Michigan State University Police Department Detective Sergeant Christopher Rozman, and Federal Bureau of Investigation Special Agent Rodney Charles, Defendant Teachnor-Hauk stated that she had never had an athlete tell her that Defendant Nassar had made them uncomfortable or that Defendant Nassar had performed digital vaginal penetration.

-18-

115. Defendant Teachnor-Hauk's March 15, 2017 statements to law enforcement were false for the reason that numerous athletes had previously reported concerns of uncomfortable and inappropriate treatment by Defendant Nassar to her, including complaints of digital vaginal penetration by Defendant Nassar under the guise of medical treatment.

116. Several Plaintiff were made aware of Defendant Nassar's widespread sexual abuse on or around September 12, 2016 or sometime thereafter through related media coverage.

117. Others have been made aware of the allegations of Defendant Nassar's conduct more recently through related media coverage.

118. Defendant Nassar's employment ended with Defendant MSU on approximately September 20, 2016 only after the MSU Defendants became aware that:

    a. Defendants Nassar and USAG were sued by a former Olympian who alleged she was sexually assaulted by Defendant Nassar; and,

    b. A former patient of Defendant Nassar, Rachel Denhollander, filed a criminal complaint with the Michigan State University Police Department alleging Defendant Nassar sexually assaulted her when she was 15 years old and seeking treatment for back pain as a result of gymnastics. Ms. Denhollander's allegations of sexual assault by Defendant Nassar included but were not limited to:

        i. Massaging her genitals;

        ii. Penetrating her vagina and anus with his finger and thumb; and,

        iii. Unhooking her bra and massaging her breasts.

119. Reasons given to Defendant Nassar for his termination included but were not limited to:

a. Deviation from "required best practices put in place following the internal sexual harassment investigation conducted ... in 2014;"

b. Failure to disclose a 2004 complaint to Meridian Township Police; and,

c. Dishonesty by Defendant Nassar when Defendant MSU questioned him about receiving prior complaints about the "procedure" at issue.

120. Defendant MSU's failure to properly supervise Defendant Nassar and their negligence in retaining Defendant Nassar is in violation of Michigan common law.

121. In 2004, Defendant Nassar authored a chapter in Principles of Manual Sports Medicine by Steven J. Karageanes.

122. In the chapter, Defendant Nassar described the pelvic diaphragm, coccyx, and sacroiliac ligaments as an area of the body not fully examined due to its proximity to the genitalia and buttocks, and stated it was "referred to as the 'no fly zone' because of the many cultural stigmas in touching this area."

123. Defendant Nassar recommended taking "special measures to explain any examination and techniques applied in this region," and "warning in advance of what you are planning to do," among other suggestions.

124. There is no mention of intravaginal or intra-rectal techniques or procedures in the chapter.

125. As described in detail below, Defendant Nassar often failed to follow his own recommendations with Plaintiff as:

a. He did not explain any intravaginal or intra-rectal techniques to Plaintiff or their parents; and,

b. He did not warn Plaintiff he was going to engage in vaginal or anal digital penetration before doing so.

126. After receiving allegations of "athlete concerns," in approximately summer

-20-

2015, Defendant USAG relieved Defendant Nassar of his duties.

127.    Shortly after MSU terminated Defendant Nassar's employment, Defendant Klages requested the MSU Women's Gymnastics Team members to sign a card for the team to show their support for Defendant Nassar-despite the fact that Defendant Klages was aware that Defendant Nassar's employment had been terminated due to numerous claims of sexual assault against patients and athletes.

128.    Defendant Klages also passionately defended Defendant Nassar to the MSU Women's Gymnastics Team and told her athletes that she would trust her own grandkids with him—despite the numerous allegations of sexual assault against Defendant Nassar and the existence of open criminal investigations into his conduct.

129.    In September 2016, following MSU's termination of Defendant Nassar's employment, MSU Athletic Department's Director of Athletic Communications, Jamie Weir Baldwin, instructed members of the MSU Women's Gymnastics Team not to speak to the media or post on their social media accounts regarding Defendant Nassar's actions.

130.    Based on the communications of the MSU Athletic Department, members of the MSU Women's Gymnastics Team believed that they would be punished by MSU or face consequences if they came forward to the police or media to describe sexual assaults against them.

131.    In December 2016, following the filing of federal child pornography charges against Defendant Nassar, Defendant Klages continued to defend Defendant Nassar and told the parent of one of Defendant Nassar's victims that the child pornography "could have been planted" by somebody suing Defendant Nassar and also continued to deny that Defendant Nassar had sexually assaulted any patients by suggesting that the victims had

"misinterpreted the treatment."

132.    MSU did not directly encourage the members of the MSU Women's Gymnastics Team to report suspected abuse by Defendant Nassar to the police until February 2017-approximately 5 months after MSU terminated Defendant Nassar's employment.

133.    In approximately December 2016, Defendant USAG settled one or more claims against it involving allegations of sexual abuse by Defendant Nassar against Olympic gold-medal-winning gymnast McKayla Maroney pursuant to a confidential settlement agreement in California.

134.    Upon information and belief, USAG entered into one or more confidential settlement agreements in California involving claims of child sex abuse or other acts that could be prosecuted as a felony sex offense by Defendant Nassar.

135.    Notably, California law prohibits confidential settlements in cases involving allegations of child sexual abuse or an act that could be prosecuted as a felony sex offense. CAL. CIV. PROC. CODE § 1002.

136.    Upon information and belief, USAG's settlement agreement with McKayla Maroney is not the first or the only settlement agreement that USAG has entered into to resolve civil claims of victims of sexual abuse by Defendant Nassar against USAG.

137.    In late November 2016, Defendant Nassar was arrested and charged in Ingham County, Michigan on three charges of first-degree criminal sexual conduct with a person under 13, and was later released on a $1 million bond.

138.    In mid-December 2016, Defendant Nassar was indicted, arrested, and charged in the United States District Court for the Western District of Michigan in Grand Rapids, Michigan on charges of possession of child pornography and receipt/attempted receipt of

child pornography.

139.   According to the federal indictment, Defendant Nassar:

a.   Knowingly received and attempted to receive child pornography between approximately September 18, 2004 and December 1, 2004;

b.   Knowingly possessed thousands of images of child pornography between approximately February 6, 2003 and September 20, 2016, including images involving a minor who was under the age of 12.

140.    Testimony given by an FBI agent at a hearing held on December 21, 2016, alleged, among other allegations, that Defendant Nassar used a GoPro camera to record video images of children in a swimming pool and that:

a.   Defendant Nassar's hand can be seen grabbing one girl's hand and shoving it into the vaginal area of another girl; and

b.   Defendant Nassar's thumb can be seen pressing into a child's vagina/vaginal area.

141.   In mid-January 2017, Brooke Lemmen, D.O. submitted a letter of resignation to Mr. Strampel amid allegations that she:

a.   Removed several boxes of confidential treatment patient records from Defendant MSU's Sports Medicine clinic at Defendant Nassar's request;

b.   Did not disclose to Defendant MSU that Defendant USAG was investigating Defendant Nassar as of July 2015; and

c.   Made a staff member feel pressured not to fully cooperate in an internal investigation into allegations against Defendant Nassar.

142.   On February 7, 2017, a superseding indictment added an additional count of "Destruction and Concealment of Records and Tangible Objects" alleging between September 19, 2016 and September 20, 2016, Defendant Nassar "caused a third-party vendor to permanently delete and destroy all images, records, documents, and files contained on the hard drive of a laptop computer, and the defendant threw in the trash a

number of external hard drives."

143.    On February 17, 2017, following a preliminary examination, Defendant Nassar was ordered to stand trial on three charges of first-degree criminal sexual conduct with a person under 13 in Ingham County following testimony, which included, among other, allegations of digital vaginal penetration at Defendant Nassar's residence.

144.    On February 22, 2017, Defendant Nassar was arraigned on 22 counts of first-degree criminal sexual conduct with a person under 13 years old, and 14 counts of third-degree criminal sexual conduct with a person under 13 years old in Ingham County, Michigan and Eaton County, Michigan.

145.    On March 17, 2017, Defendant MSU's Office of Institutional Equity released a Title IX report concluding that Defendant Nassar sexually assaulted one of his patients, Rachael Denhollander, in or about 2000. The report stated that evidence supports a finding that Defendant Nassar "committed these acts in a sexual manner regardless of whether it was done for medical purposes."

146.    At least three more internal Title IX investigations conducted by Michigan State University following the Title IX investigation for Rachael Denhollander determined Larry Nassar violated University policy.

147.    Defendant Nassar's preliminary examinations on the second set of charges in Ingham County was held on May 12, 2017, May 26, 2017, and June 23, 2017.

148.    During Nassar's preliminary examination on May 12, 2017 in the 55th District Court in Ingham County, Michigan, a young woman testified regarding an instance of sexual assault that occurred at Twistars's facility in Dimondale, Michigan in approximately 2010 when she was fifteen years old as follows, "Mostly all I remember is [Nassar] doing the

-24-

treatment on me with his fingers in my vagina, massaging my back with a towel over my butt, and John [Geddert] walking in and making a joke that I guess my back really did hurt, and then I was uncomfortable because John [Geddert] was in there during that."

149.    At the conclusion of the preliminary examinations, Defendant Nassar was ordered to stand trial on 12 counts of first-degree criminal sexual conduct following testimony by Rachael Denhollander and others, which included among others, allegations of digital vaginal penetration by Defendant Nassar.

150.    Defendant Nassar's preliminary examination on the charges issued in Eaton County, Michigan was held on June 30, 2017.

151.    At the conclusion of the preliminary examination, Defendant Nassar was ordered to stand trial on 7 counts of first-degree criminal sexual conduct following testimony, which included among others, allegations of digital vaginal penetration by Defendant Nassar.

152.    Nassar faced a total of 22 counts of first-degree criminal sexual conduct in Circuit Court – 15 in Ingham County, Michigan and 7 in Eaton County, Michigan.

153.    On or about July 11, 2017, Defendant Nassar pled guilty in his federal criminal case to: (1) Receipt and Attempted Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A); (2) Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B); and (3) Destruction and Concealment of Records and Tangible Objects, in violation of 18 U.S.C. § 1519.

154.    On November 11, 2017 Defendant Nassar pleaded guilty to seven counts of first-degree criminal sexual conduct in Ingham County Circuit Court.

155.    On November 29, 2017 Defendant Nassar pleaded guilty to three counts of

first-degree criminal sexual conduct in Eaton County Circuit Court.

156.    On December 7, 2017 Defendant Nassar was sentenced in the United States District Court for the Western District of Michigan by District Court Judge Janet T. Neff to three twenty-year sentences to be served consecutively on his convictions for (1) Receipt and Attempted Receipt of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A); (2) Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B); and (3) Destruction and Concealment of Records and Tangible Objects, in violation of 18 U.S.C. § 1519.

157.    On January 24, 2018, Defendant Nassar was sentenced in the Ingham County Circuit Court for the State of Michigan by the Honorable Rosemarie E. Aquilina to 40 to 175 years in prison on seven sexual assault charges.

158.    On February 5, 2018, Defendant Nassar was sentenced in the Eaton County Circuit Court for the State of Michigan by the Honorable Janice K. Cunningham to 40 to 125 years in prison on three sexual assault charges.

159.    The acts, conduct, and omissions of the MSU Defendants, and their policies, customs, and practices with respect to investigating sexual assault allegations severely compromised the safety and health of Plaintiff and an unknown number of individuals, and have resulted the sexual assault, battery, molestation, and harassment of Plaintiff by Defendant Nassar, which has been devastating for Plaintiff and her family.

160.    A special, confidential, and fiduciary relationship was created between Plaintiff and Defendant Nassar when Plaintiff sought medical treatment from Defendant Nassar in the course of his employment, agency, and/or representation of the MSU Defendants, resulting in Defendant Nassar owing Plaintiff a duty to disclose known acts of

sexual assault, battery, molestation, and harassment against Plaintiff.

161.  A special, confidential, and fiduciary relationship was created between Plaintiff and the MSU Defendants when Plaintiff sought medical treatment from Defendant Nassar in the course of his employment, agency, and/or representation of the MSU Defendants, resulting in the MSU Defendants owing Plaintiff a duty to disclose known acts of sexual assault, battery, molestation, and harassment against Plaintiff.

162.  A special, confidential, and fiduciary relationship was created and existed between Nassar and the MSU Defendants, resulting in the MSU Defendants owing Plaintiff a duty to disclose known acts of sexual assault, battery, molestation, and harassment to Plaintiff.

163.  A special, confidential, and fiduciary relationship was created between Plaintiff and Defendant USAG when Plaintiff sought medical treatment from Defendant Nassar in the course of his employment, agency, and/or representation of Defendant USAG, resulting in Defendant USAG owing Plaintiff a duty to disclose known acts of sexual assault, battery, molestation, and harassment against Plaintiff.

164.  A special, confidential, and fiduciary relationship was created and existed between Nassar and Defendant USAG, resulting in Defendant USAG owing Plaintiff a duty to disclose known acts of sexual assault, battery, molestation, and harassment to Plaintiff.

165.  A special, confidential, and fiduciary relationship was created and existed between Nassar and Defendant USAG, resulting in Defendant USAG owing Plaintiff a duty to disclose known acts of sexual assault, battery, molestation, and harassment to Plaintiff.

166.  This action arises from Defendants' blatant disregard for Plaintiff' federal and state rights, and Defendants' deliberately indifferent and unreasonable response to

-27-

physician-on-patient/physician-on-student/physician-on-athlete sexual assault, battery, molestation, and harassment.

<u>**ALLEGATIONS SPECIFIC TO PLAINTIFF**</u>

167.   The name of the Plaintiff has been withheld from this Complaint to protect her identity as many of the Plaintiff were minor children at the time the sexual abuse occurred and the allegations involve injuries of a personal and sensitive nature.

A.   **Plaintiff JANE DOE KJ**

168.   Plaintiff JANE DOE KJ is an adult.

169.   Plaintiff was a member of USA Gymnastics from approximately 1997 to 2012.

170.   Plaintiff competed in national competitions.

171.   Plaintiff treated with Defendant Nassar in November 2011 at the Michigan State Sports Medicine Clinic.

172.   During her treatment with Defendant Nassar, Plaintiff was a minor.

173.   In November 2011, Defendant Nassar, while treating Plaintiff, fondled Plaintiff's breasts, genitals and buttocks, put his hands underneath her shorts, and vaginally penetrated JANE DOE KJ.

174.   Defendant Nassar committed this fondling and penetration of Plaintiff without gloves and under Plaintiff's shorts without notice and without obtaining the consent of her or her parents.

175.   Defendant Nassar videotaped his treatment session with JANE DOE KJ.

176.   Plaintiff believes the conduct of Defendant Nassar was sexual assault, abuse, molestation and harassment performed for Defendant Nassar's sexual pleasure and gratification.

**ALLEGATIONS OF FRAUDULENT CONCEALMENT**

**A.    THE MSU DEFENDANTS**

177.   Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

178.   Plaintiff hereby alleges that the MSU Defendants committed Fraudulent Concealment by committing Fraud, as described in detail above and below, and concealing the existence of Plaintiff's claims and that Plaintiff had a cause of action against the MSU Defendants at the time Defendant Nassar's sexual assaults occurred making a material representation(s) to Plaintiff involving a past or existing fact by:

> a.    Making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal or anal penetration;
>
> b.    Making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;
>
> c.    Making the statement, explaining, that his acts and/or conduct was "checking your sternum;"
>
> d.    Making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"
>
> e.    Making the statement, explaining, that his acts and/or conduct was medical "treatment" or for a legitimate medical purpose;
>
> f.    Making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [ther] ribs;" and,
>
> g.    Making a statement, explaining to Plaintiff and another medical professional; that the position of his hand was in an appropriate place, when it was not and while he was digitally penetrating Plaintiff, all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

179.   The material representation(s) to Plaintiff were false, in that he was actually performing them for his own sexual gratification and pleasure evidenced by his observed

-29-

arousal, flushed face, and closing of the eyes during the conduct.

180.    When   Defendants'   agents   and   employees   made   the   material representation(s), they knew that they were false, in that they knew that the "treatment[s]" were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or sports therapist.

181.    Defendants made the material representation(s) with the intent that the material representation(s) should be acted or relied upon by Plaintiff or her parents, such that Plaintiff:

   a.    Should believe that the "treatments" were in fact legitimate medical "treatments;"

   b.    Should believe that the "treatment[s]" were proper, appropriate, and legitimate;

   c.    Should not believe that they had been sexually assaulted;

   d.    Should not believe that they had been sexually assaulted so that he could prevent discovery of his sexual assaults;

   e.    Should continue the "treatment[s]" so that he could continue to sexually assault them;

   f.    Should not question and/or report the conduct to appropriate authorities; and

   g.    Should not reasonably believe and not be aware of a possible cause of action that they had against Defendant Nassar and/or Defendant MSU.

182.    Plaintiff acted in reliance upon the material representation(s), in that Plaintiff:

   a.    Reasonably believed that the "treatments" were in fact "treatments;"

   b.    Reasonably believed that the "treatments" were proper, appropriate, and legitimate;

   c.    Reasonably did not believe that they had been sexually assaulted;

   d.    Believed that they should continue the "treatment[s];"

e.   Did not believe that they should question and/or report the conduct to appropriate authorities; and,

f.   Did not reasonably believe that they had, and were not aware of, a possible cause of action that they had against Defendant Nassar and/or the MSU Defendants.

183.   Plaintiff thereby suffered injury, in that Plaintiff:

a.   Could not stop the sexual assault;

b.   Continued to undergo the "treatment[s]" and sexual assaults;

c.   And suffered discomfort, bleeding, urinary tract infections, bacterial infections, related physical manifestations thereof, sleep deprivation, physical illness, vomiting, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body, was prevented and will continue to be prevented from performing Plaintiff' daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity, among other injuries more fully described below.

184.   Concealing the fraud by making a fraudulent material representation(s) to Plaintiff that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he made a material representation(s) to Plaintiff involving a past or existing fact by:

a.   Making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal or anal penetration;

b.   Making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

c.   Making the statement, explaining, that his acts and/or conduct was "checking [her] sternum;"

d.   Making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

e.   Making the statement, explaining, that his acts and/or conduct was medical "treatment" for a legitimate medical purpose and that it was the same that he performed on Olympic athletes;

      f.      Making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [her] ribs;" and,

      g.      Making the statement that the position of his hand was in an appropriate place—when it was not-while he was digitally penetrating Plaintiff, all of which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

185.    Defendants' agents and employees concealed the fraud by affirmative act(s) that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that Defendant Nassar:

      a.      Positioned himself in a manner in which parents or chaperones in the room could not see his conduct, so that he could conceal and prevent discovery of his conduct;

      b.      Dismissed a medical professional from the room, during an examination of Plaintiff while he was digitally penetrating Plaintiff, who questioned the placement of his hands;

      c.      Prevented other medical professionals, chaperones, parents, guardians, and/or caregivers from being in the room during examinations and treatments of Plaintiff so that he could sexually assault Plaintiff;

      d.      Did not abide by or follow the standard and care which requires another medical professional, chaperone, parent, guardian, and/or caregiver be in the room during the examination and treatment of minors and female patients;

      e.      Did not abide by or follow the restrictions that had been put into place in 2014 by Defendant MSU restricting his examination and treatment of patients only with another person in the room; and,

      f.      Gave Plaintiff, at appointments, gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without, in order to gain their trust.

186.    The actions and inactions of Defendants, as described in the preceding paragraphs, constituted Fraudulent Concealment.

187.    At all times pertinent to this action, Defendant Nassar was an agent, apparent

agent, servant, and employee of Defendant MSU and operated within the scope of his employment and his negligence is imputed to Defendant MSU.

188.   At all times material hereto, Plaintiff were entirely free of any negligence contributing to the injuries and damages hereinafter alleged.

189.   Plaintiff did not know, could not have reasonably known, and was reasonably unaware of a possible cause of action that she had against Defendant Nassar and/or Defendant MSU until the September 12, 2016 publication of a story regarding a complaint filed with Defendant MSU's Police Department, titled "Former USA Gymnastics doctor accused of Abuse," or sometime thereafter, for the following reasons among others:

   a.   Plaintiff reasonably relied on the Fraud committed by Defendant Nassar by his material representations and concealment of the true nature of his "treatments[s]"and his actions;

   b.   Plaintiff were minors at the time of the assaults and "treatments;"

   c.   Plaintiff did not know what a legitimate and appropriately performed intra-vaginal or intra-anal/rectal treatment was like because they had never experienced and/or had an intra-vaginal or intra-anal/rectal treatment before;

   d.   Plaintiff had never experienced and/or had an intra-vaginal treatment before because they had never been treated by a physician and/or therapist that performed them;

   e.   Plaintiff did not know what a legitimate and appropriately performed pelvic, vaginal, anal, and/or breast exam was like because they had never experienced and/or had a pelvic, vaginal, anal, and/or breast exam before;

   f.   Plaintiff had never experienced and/or had a pelvic and/or vaginal exam before because pelvic and/or vaginal exams are not recommended and routinely performed until a female reaches at least the age of 18 years old, pursuant to longstanding recommendations in the literature, expert opinions, treatment guidelines, and position statement from the American Academy of Pediatrics, American Academy of Family Physicians, American Cancer Society, American College of Obstetricians and Gynecologists, American Society for

Clinical Pathology, and American Society for Colposcopy and Cervical Pathology;

g.    Plaintiff had never experienced and/or had a breast exam before because breast exams are not recommended and routinely performed until a female reaches at least the age of 21 years old, pursuant to longstanding recommendations in the literature, expert opinions, treatment guidelines, and position statement from the American Academy of Pediatrics, American Academy of Family Physicians, American Cancer Society, American College of Obstetricians and Gynecologists, American Society for Clinical Pathology;

h.    Because of these recommendations and never having had one of these treatments or exams, it was very difficult if not impossible for Plaintiff to differentiate a legitimate and appropriately performed intra-vaginal treatment, pelvic, vaginal, anal, and/or breast exam from a sexual assault;

i.    Plaintiff could not have possibly known because there were no parents, chaperones, guardians, caregivers, and/or other medical professionals in the room during the "treatments" to observe, question, and/or discover that his "treatments" were sexual assaults and inform Plaintiff that they had been sexually assaulted and had a cause of action against Defendant Nassar;

j.    In the instances where a parent was present in the room, Defendant Nassar's actions to conceal the physical assaults from the view of the parents prevented the parents from discovering that his "treatments" were sexual assaults and informing Plaintiff that they had been sexually assaulted and had a cause of action against Defendant Nassar;

k.    Based on Neuroscience, the prefrontal cortex of the brain, which we use to make decisions and distinguish right from wrong, is not fully formed until around the age of 23;

l.    Based on Neuroscience, as the prefrontal cortex of the brain matures teenagers are able to make better judgments;

m.   Plaintiff were intimidated by Defendant Nassar's notoriety and reputation and therefore believed his misrepresentations that the "treatment[s]" were legitimate and appropriate;

n.    Plaintiff trusted Defendant Nassar due to his notoriety and reputation;

o.    Plaintiff trusted Defendant Nassar because he groomed them to believe that his "treatments" were legitimate;

-34-

p.      Plaintiff trusted and felt that Defendant Nassar was a friend because at appointments he gave Plaintiff gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without, in order to gain their trust;

q.      Plaintiff had no reason to believe or be aware that they could possibly sue or had a possible cause of action because they were minors who were not knowledgeable or aware of the civil justice system;

r.      Plaintiff had no reason to believe or be aware that they could possibly sue or had a possible cause of action because they were minors who were not knowledgeable or aware of any remedy at law;

s.      Plaintiff had no reason to believe or be aware that they could possibly sue or had a possible cause of action evidenced by the fact that so many other girls had been sexually assaulted by Defendant Nassar over the past few decades, none of them had a reason to believe or be aware that they could possibly sue or had a possible cause of action in the past; and none of them have ever sued him in the past;

t.      Plaintiff were never told by Defendant Nassar that his conduct was sexual in nature and not legitimate and appropriate "treatment[s]" and to conceal the sexual conduct from their parents and others, unlike other victims of sexual abuse who are typically told by their perpetrators that their conduct is of a sexual nature and to conceal the sexual conduct from their parents and others;

u.      Plaintiff were compelled by Defendant Nassar to undergo "treatment[s]" like other athletes if they wanted to continue being involved in the relevant sport, and that therefore, the "treatments" were legitimate and appropriate;

v.      Plaintiff were minors and young athletes; therefore, they were easily suggestible; and,

w.      Plaintiff had never previously heard about any allegations in the media regarding sexual assaults or misconduct by Defendant Nassar.

190.    Defendant MSU's sports medicine trainers, trainers, employees, staff, managers, supervisors, directors, agents, apparent agents, and/or servants made material representation(s) to Plaintiff involving a past or existing fact by making statements that:

a.      Defendant Nassar was an "Olympic doctor" and "knew what he was doing" in regard to performing appropriate "treatments;"

b.   Defendant Nassar was a "world-renowned doctor" and that "it was legitimate medical treatment," in regard to the legitimacy and appropriateness of the "treatments;"

c.   Defendant Nassar's conduct was "not sexual abuse,"

d.   Defendant Nassar was a "world-renowned doctor;" and,

e.   Defendant Nassar's conduct and "treatment[s]" were "medically appropriate" and "[n]ot of a sexual nature" because the complainant "didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure."

191.   The material representation(s) to Plaintiff were false, in that the MSU Defendants had previously received strikingly similar complaints of abuse by Defendant Nassar from other patients, students, and student athletes and knew that the appropriateness of his "treatment[s]" had been questioned in the past.

192.   When the MSU Defendants made the material representation(s), they knew that they were false and/or made the material representation(s) recklessly, without any knowledge of their truth and as a positive assertion, in that they knew that Defendant MSU had previously received strikingly similar complaints of abuse by Defendant Nassar from other students and student athletes and knew that the appropriateness of his "treatment[s]" had been questioned in the past.

193.   The MSU Defendants made the material representation(s) with the intent that the material representation(s) should be acted upon by Plaintiff, in that Plaintiff:

a.   Should believe that the "treatments" were in fact "treatments;"

b.   Should believe that the "treatment[s]" were proper, appropriate, and legitimate;

c.   Should not believe that they had been sexually assaulted;

d.   Should not question and/or report the conduct to other authorities; and,

e.   Should not reasonably believe and not be aware of a possible cause of action that they had against Defendant Nassar and/or the MSU Defendants.

194.   Plaintiff acted in reliance upon the material representation(s), in that Plaintiff:

a.   Reasonably believed that the "treatments" were in fact "treatments;"

b.   Reasonably believed that the "treatments" were proper, appropriate, and legitimate;

c.   Reasonably did not believe that they had been sexually assaulted;

d.   Reasonably believed that they should continue the "treatment[s];"

e.   Did not believe that they should question and/or report the conduct to appropriate authorities; and,

f.   Did not reasonably believe that they had, and was not aware of, a possible cause of action that they had against Defendant Nassar and/or Defendant MSU.

195.   Plaintiff thereby suffered injury, in that Plaintiff:

a.   Could not stop the sexual assault;

b.   Continued to undergo the "treatment[s]" and sexual assaults; and,

c.   Suffered discomfort, bleeding, urinary tract infections, bacterial infections, related physical manifestations thereof, sleep deprivation, physical illness, vomiting, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body, was prevented and will continue to be prevented from performing Plaintiff' daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity, among other injuries more fully described below.

196.   The MSU Defendants concealed the fraud by making a fraudulent material representation(s) to Plaintiff that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that they made a material representation(s) to Plaintiff involving a past or existing fact by:

-37-

a.   Making the statement that Defendant Nassar was an "Olympic doctor" and "knew what he was doing" in regard to performing appropriate "treatments;"

b.   Making the statement that Defendant Nassar was a "world-renowned doctor" and that "it was legitimate medical treatment," in regard to the legitimacy and appropriateness of the "treatments;"

c.   Making the statement that Defendant Nassar's conduct was "not sexual abuse," that he was a "world-renowned doctor;" and,

d.   Making the statement that Defendant Nassar's conduct and "treatment[s]" were "medically appropriate" and "[n]ot of a sexual nature" because the complainant "didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure;"

197.   The MSU Defendants concealed the fraud by affirmative acts that were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that they:

a.   Ignored, refused, and failed to inquire, question, and investigate the complaints and take action regarding Defendant Nassar's "treatments;"

b.   Did not create a policy to require adults, parents, chaperones, guardians, and/or caregiver's presence during an examination of a minor or female by a physician; and,

c.   Did not enforce the restrictions that had been put into place in 2014 by Defendant MSU restricting his examination and treatment of patients only with another person in the room;

198.   Plaintiff did not know, could not have reasonably known, and were reasonably unaware of a possible cause of action that they had against Defendant Nassar and/or the MSU Defendants until the September 12, 2016 publication of a story regarding a complaint filed with Defendant MSU's Police Department, titled "Former USA Gymnastics doctor accused of Abuse," or shortly thereafter, for the following reasons among others:

-38-

a.   Plaintiff reasonably relied on the Fraud committed by Defendant Nassar by his material representations and concealment of the true nature of his "treatments[s]"and his actions;

b.   Plaintiff were minors at the time of the assaults and "treatments;"

c.   Plaintiff did not know what a legitimate and appropriately performed intra-vaginal treatment was like because they had never experienced and/or had an intra-vaginal treatment before;

d.   Plaintiff had never experienced and/or had an intra-vaginal treatment before because they had never been treated by a physician and/or therapist that performed them;

e.   Plaintiff did not know what a legitimate and appropriately performed pelvic, vaginal, anal, and/or breast exam was like because they had never experienced and/or had a pelvic, vaginal, anal, and/or breast exam before;

f.   Plaintiff had never experienced and/or had a pelvic and/or vaginal exam before because pelvic and/or vaginal exams are not recommended and routinely performed until a female reaches at least the age of 18 years old, pursuant to longstanding recommendations in the literature, expert opinions, treatment guidelines, and position statement from the American Academy of Pediatrics, American Academy of Family Physicians, American Cancer Society, American College of Obstetricians and Gynecologists, American Society for Clinical Pathology, and American Society for Colposcopy and Cervical Pathology, to name a few.

g.   Plaintiff had never experienced and/or had a breast exam before because breast exams are not recommended and routinely performed until a female reaches at least the age of 21 years old, pursuant to longstanding recommendations in the literature, expert opinions, treatment guidelines, and position statement from the American Academy of Pediatrics, American Academy of Family Physicians, American Cancer Society, American College of Obstetricians and Gynecologists, American Society for Clinical Pathology;

h.   Because of these recommendations and never having had one of these treatments or exams, it was very difficult, if not impossible, for Plaintiff to differentiate a legitimate and appropriately performed intra-vaginal treatment, pelvic, vaginal, anal, and/or breast exam from a sexual assault;

i.      Plaintiff could not have possibly known because there were no parents, chaperones, guardians, caregivers, and/or other medical professionals in the room during the "treatments" to observe, question, and/or discover that his "treatments" were sexual assaults and inform Plaintiff that they had been sexually assaulted and had a cause of action against Defendant Nassar;

j.      In the instances where a parent was present in the room, Defendant Nassar's actions to conceal the physical assaults from the view of the parents prevented the parents from discovering that his "treatments" were sexual assaults and informing Plaintiff that they had been sexually assaulted and had a cause of action against Defendant Nassar;

k.      Based on Neuroscience, the prefrontal cortex of the brain, which we use to make decisions and distinguish right from wrong, is not fully formed until around the age of 23;

l.      Based on Neuroscience, as the prefrontal cortex of the brain matures, teenagers are able to make better judgments;

m.      Plaintiff were intimidated by Defendant Nassar's notoriety and reputation and therefore believed his misrepresentations that the "treatment[s]" were legitimate and appropriate;

n.      Plaintiff trusted Defendant Nassar due to his notoriety and reputation;

o.      Plaintiff trusted Defendant Nassar because he groomed them to believe that his "treatments" were in fact legitimate "treatments;"

p.      Plaintiff trusted and felt that Defendant Nassar was a friend because he gave Plaintiff, at appointments, gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without, in order to gain their trust;

q.      Plaintiff had no reason to believe or be aware that they could possibly sue or had a possible cause of action because they were minors who were not knowledgeable or aware of the civil justice system;

r.      Plaintiff had no reason to believe or be aware that they could possibly sue or had a possible cause of action because they were minors who were not knowledgeable or aware of any remedy at law;

s.      Plaintiff had no reason to believe or be aware that they could possibly sue or had a possible cause of action evidenced by the fact that so many other girls had been sexually assaulted by Defendant Nassar over the past few decades, none of them had a reason to believe or be aware that

-40-

they could possibly sue or had a possible cause of action in the past; and none of them have ever sued him in the past;

t. Plaintiff were never told by Defendant Nassar that his conduct was sexual in nature and not legitimate and appropriate "treatment[s]" and to conceal the sexual conduct from their parents and others, unlike other victims of sexual abuse who are typically told by their perpetrators that their conduct is of a sexual nature and to conceal the sexual conduct from their parents and others;

u. Plaintiff were compelled by Defendant Nassar to undergo "treatment[s]" like other athletes if they wanted to continue being involved in their relevant sport, and therefore, the "treatments" were legitimate and appropriate;

v. Plaintiff were minors; therefore, they were easily suggestible;

w. Plaintiff had never previously heard about any allegations in the media regarding sexual assaults or misconduct by Defendant Nassar.

x. Plaintiff reasonably relied on the Fraud committed by Defendant MSU by their material representations and concealment of the true nature of Defendant Nassar's "treatments[s]"and his actions;

y. Plaintiff trusted Defendant MSU that they would protect Plaintiff from harm and not hire, employee, and/or retain a physician that had, was, or would perform illegitimate and/or inappropriate "treatment[s]," engage in inappropriate conduct, and/or sexually assault patients, students, and/or athletes;

z. Plaintiff were never told by Defendant MSU that Defendant Nassar's conduct and "treatment[s]" was inappropriate and sexual assault, to the contrary, Plaintiff were told that Defendant Nassar's conduct and "treatment[s]" were appropriate and legitimate "treatment[s]," "not sexual abuse," "medically appropriate," and "[n]ot of a sexual nature" from a "world-renowned" and "Olympic doctor," who "knew what he was doing" and that Plaintiff, because of their age and inexperience with intra-vaginal treatment, pelvic, vaginal, anal, and/or breast exams, "didn't understand the 'nuanced difference' between sexual assault and an appropriate medical procedure;"

aa. Plaintiff reasonably relied on Defendant MSU to protect them and Defendant MSU's statements; and,

bb. Plaintiff were compelled by Defendant MSU to undergo "treatment[s]" like other athletes if they wanted to continue being involved in their

relevant sport, and therefore, the "treatments" were legitimate and appropriate.

199.    The actions and inactions of the MSU Defendants and their agents and employees, as described in the preceding paragraphs, constituted Fraudulent Concealment.

200.    At all times pertinent to this action, Defendant Nassar was an agent, apparent agent, servant, and employee of Defendant MSU and operated within the scope of his employment and his Fraudulent Concealment is imputed to Defendant MSU.

201.    The actions and inactions of the sports medicine trainers, trainers, employees, staff, managers, supervisors, and directors of the MSU Defendants, as described in the preceding paragraphs, constituted Fraudulent Concealment.

202.    At all times pertinent to this action, the sports medicine trainers, trainers, employees, staff, managers, supervisors, and directors of Defendant MSU were agents, apparent agents, servants, and employees of Defendant MSU and operated within the scope of their employment and their Fraudulent Concealment is imputed to Defendant MSU.

203.    At all times material hereto, Plaintiff were entirely free of any negligence contributing to the injuries and damages hereinafter alleged.

**B.    DEFENDANT USA GYMNASTICS**

204.    Plaintiff reallege and incorporate by reference the allegations contained in the previous paragraphs.

205.    Plaintiff incorporates by reference the Fraud claims made below and hereby alleges that Defendant USAG committed Fraudulent Concealment by committing Fraud, as described in detail above and below, and concealing the existence of Plaintiff' claims and that Plaintiff had a cause of action against Defendant Nassar and/or Defendant USAG at the time

his sexual assaults occurred by Defendant Nassar making a material representation(s) to Plaintiff involving a past or existing fact by:

  a.  Making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

  b.  Making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

  c.  Making the statement, explaining, that his acts and/or conduct was "checking [her] sternum;"

  d.  Making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

  e.  Making the statement, explaining, that his acts and/or conduct was medical "treatment" for a legitimate medical purpose and that it was the same that he performed on Olympic athletes;

  f.  Making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [her] ribs;" and,

  g.  Making a statement, explaining to Plaintiff and another medical professional that the position of his hand was in an appropriate place—when it was not—and while he was digitally penetrating Plaintiff, all of which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

206.   The material representation(s) to Plaintiff by Defendant Nassar were false, in that he was actually performing them for his own sexual gratification and pleasure evidenced by his observed arousal, flushed face, and closing of the eyes during the conduct.

207.   When Defendant Nassar made the material representation(s), he knew that they were false, in that he knew that the "treatment[s]" were not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty and/or sports therapist.

208.   Defendant USAG had knowledge of Nassar's criminal propensity of committing sexual abuse as early as 1998. This is confirmed by the following evidence:

a.  Upon information and belief, in 1998, Defendant USAG received a complaint about Larry Nassar's sexual abuse by a parent of Jane A71 Doe. The complaint was made directly to US Olympic Gymnastics Head Coach, John Geddert, a long-time agent of USAG.

b.  Upon information and belief, the parent of Plaintiff Jane A71 Doe, also complained of Nassar's sexual abuse to other USAG coaches while Plaintiff Jane A71 Doe was engaged in gymnastics activities at the Twistars facility, which is a USAG registered gymnastics club.

c.  During Nassar's preliminary examination on May 12, 2017, in the 55th District Court in Ingham County, Michigan, a young woman testified regarding an instance of sexual assault that occurred at Twistars' facility in Dimondale, Michigan in approximately 2010 when she was fifteen years old. She testified that, "*Mostly all I remember is [Nassar] doing the treatment on me with his fingers in my vagina, massaging my back with a towel over my butt, and John [Geddert] walking in and making a joke that I guess my back really did hurt, and then I was uncomfortable because John [Geddert] was in there during that.*"

d.  Altogether, between 1999 and 2016, at least thirty-two (32) USAG gymnasts were sexually abused by Larry Nassar while participating in USAG-sanctioned events, at USAG's famed Karolyi Ranch, and at the USAG gymnastics club, Twistars. Upon information and belief, the living quarters and scheduling routines of these gymnasts were such that it was nearly impossible for USAG coaches, USAG trainers, and USAG agents to not know what Larry Nassar was doing.

209.  Defendant Nassar made the material representation(s) with the intent that the material representation(s) should be acted upon by Plaintiff, in that Plaintiff:

a.  Should believe that the "treatments" were in fact "treatments;"

b.  Should believe that the "treatment[s]" were proper, appropriate, and legitimate;

c.  Should not believe that they had been sexually assaulted; should not believe that they had been sexually assaulted so that he could prevent discovery of his sexual assaults;

d.  Should continue the "treatment[s]" so that he could continue to sexually assault them;

e.  Should not question and/or report the conduct to appropriate authorities; and,

     f.     Should not reasonably believe and not be aware of a possible cause of action that they had against Defendant Nassar and/or Defendant USAG.

210.   Plaintiff acted in reliance upon Defendant Nassar's material representation(s), in that Plaintiff:

     a.     Reasonably believed that the "treatments" were in fact "treatments;"

     b.     Reasonably believed that the "treatments" were proper, appropriate, and legitimate;

     c.     Reasonably did not believe that they had been sexually assaulted;

     d.     Believed that they should continue the "treatment[s];"

     e.     Did not believe that they should question and/or report the conduct to appropriate authorities; and did not reasonably believe that they had, and were not aware of, a possible cause of action that they had against Defendant Nassar and/or Defendant USAG.

211.   Plaintiff thereby suffered injury, in that Plaintiff:

     a.     Could not stop the sexual assault;

     b.     Continued to undergo the "treatment[s]" and sexual assaults; and,

     c.     Suffered discomfort, bleeding, urinary tract infections, bacterial infections, related physical manifestations thereof, sleep deprivation, physical illness, vomiting, severe emotional distress, shock, humiliation, fright, grief, embarrassment, loss of self-esteem, disgrace, loss of familial relationships, loss of enjoyment of life and will continue to suffer pain of mind and body, was prevented and will continue to be prevented from performing Plaintiff' daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity, among other injuries more fully described below.

212.   Defendant Nassar concealed the fraud by making a fraudulent material representation(s) to Plaintiff that were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he made a material representation(s) to Plaintiff involving a past or existing fact by:

-45-

a. Making the statement, explaining, that his acts and/or conduct were a "new procedure" which involved vaginal penetration;

b. Making the statement, referring to his conduct, disguised as "treatment," as a pelvic adjustment;

c. Making the statement, explaining, that his acts and/or conduct was "checking [her] sternum;"

d. Making the statement, explaining, that his acts and/or conduct was doing a "breast exam;"

e. Making the statement, explaining, that his acts and/or conduct was "treatment" and that it was the same that he performed on Olympic athletes;

f. Making the statement, explaining, that his acts and/or conduct was "attempting to manipulate [her] ribs;" and,

g. Making a statement, explaining to Plaintiff and another medical professional that the position of his hand was in an appropriate place—when it was not—and while he was digitally penetrating Plaintiff, all which were made contemporaneously and/or shortly after the abrupt, sudden, quick, and unexpected sexual assaults by Defendant Nassar.

213. Defendant Nassar concealed the fraud by an affirmative act(s) that was/were designed and/or planned to prevent inquiry and escape investigation and prevent subsequent discovery of his fraud, in that he:

a. Positioned himself in a manner in which parents or chaperones in the room could not see his conduct, so that he could conceal and prevent discovery of his conduct;

b. Dismissed a medical professional from the room, during an examination of Plaintiff while he was digitally penetrating Plaintiff, who questioned the placement of his hands;

c. Prevented other medical professionals, chaperones, parents, guardians, and/or caregivers from being in the room during examinations and treatments of Plaintiff so that he could sexually assault Plaintiff;

d. Did not abide by or follow the standard and care which requires another medical professional, chaperone, parent, guardian, and/or

caregiver be in the room during the examination and treatment of minors and female patients;

e.  Did not abide by or follow Defendant USAG's Code of Ethics, Participant Welfare Policy, Safety/Risk Management Certification, principles in Gymnastics Risk Management Safety Course Handbook, and Prohibited Conduct policy, which he was a part of creating by not examining patients in the presence of a parent, chaperone, guardian, and/or caregiver; and,

f.  Gave Plaintiff, at appointments, gifts such as t-shirts, pins, flags, leotards, and other items, some with USAG logos and others without, in order to gain their trust.

214.  The actions and inactions of Defendant Nassar, as described in the preceding paragraphs, constituted Fraudulent Concealment.

215.  At all times pertinent to this action, Defendant Nassar was an agent, apparent agent, servant, and employee of Defendant USAG and operated within the scope of his employment and his Fraudulent Concealment is imputed to Defendant USAG.

216.  At all times material hereto, Plaintiff was entirely free of any negligence contributing to the injuries and damages hereinafter alleged.

<u>**COUNT I**</u>
<u>**VIOLATION OF TITLE IX OF THE EDUCATION ACT OF 1972, 20 U.S.C. § 1681 *et seq***</u>
<u>**(Against MSU Defendants)**</u>

217.  Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

218.  Title IX, 20 U.S.C. § 1681(a) provides in pertinent part:

*"No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . ."*

219.  "Title IX also protects third parties from sexual harassment or violence in a

-47-

school's education programs and activities."

220.    Under Title IX, sexual harassment is any type of unwelcome conduct of a sexual nature. "It includes unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature."

221.    Plaintiff is a "person" within the meaning of 20 U.S.C. §1681(a).

222.    Defendant MSU receives financial assistance for its education program and is therefore subject to the provisions of Title IX of the Education Act of 1972, 20 U.S.C. § 1681, *et seq.*

223.    The U.S. Department of Education's Office of Civil Rights has explained that Title IX covers all programs of a school, and extends to sexual harassment and assault by employees, students, and third parties.

224.    Defendant Nassar's actions and conduct were carried out under one of Defendant MSU's programs, which provides medical treatment and medical care to students, including student athletes, and members of the general public.

225.    Defendant Nassar's sexual assault, battery, molestation, and harassment of Plaintiff, including the massaging of breasts and vaginal areas, constitutes sexual discrimination and harassment under Title IX.

226.    Defendant Nassar's sexual assault, battery, molestation, and harassment of Larissa Boyce, Christie Achenbach, and Tiffany Thomas Lopez constituted sexual discrimination and harassment under Title IX.

227.    Pursuant to Title IX, Defendant MSU is obligated and required to investigate all allegations of sexual assault, battery, molestation, and harassment, including allegations that sexual assault, battery, molestation, and harassment has been committed by an

employee, student, or third party.

228.    Defendant MSU owed Plaintiff duties under Title IX, which duties included not to engage in and be deliberately indifferent to known sexual assault, battery, molestation, harassment, and other sexual misconduct.

229.    Upon information and belief, an "appropriate person" at MSU, within the meaning of Title IX, including but not limited to, Kathie Klages, Kelli Bert, Lianna Hadden, Destiny Teachnor-Hauk, Gary Stollak, and other trainers and coaches, had actual and constructive notice of sexual assault, battery, molestation, and harassment committed by Defendant Nassar in 1997/1998, 1999, 2000, 2001/2002, 2004 and 2014, as described herein this Complaint.

230.    The MSU Defendants failed to carry out their duties to investigate and take corrective action, as well as to make appropriate recommendations, including informed consent, under Title IX following the complaints of sexual assault, as described herein.

231.    Despite the complaints and concerns conveyed to Defendant MSU employees, agents, and/or representatives as described herein, allegations went unaddressed, which violated reporting policies and procedures and Title IX and was done in a manner that was reckless, grossly negligent, and deliberately indifferent.

232.    The MSU Defendants acted with indifference and in a clearly unreasonable manner by failing to respond to the allegations of sexual assault, abuse, and molestation in light of the known circumstances, Defendant Nassar's conduct toward female athletes, and his access to young girls and young women.

233.    The MSU Defendants' deliberate indifference is further confirmed by the Department of Education's investigation into MSU's handling of sexual assault and

relationship violence allegations, which revealed:

    a.    That the MSU Defendants' failure to adequately respond to allegations
          of sexual assault created a sexually hostile environment and affected
          numerous students and staff on MSU's campus;

    b.    That the MSU Defendants' failure to address complaints of sexual
          violence in a prompt and equitable manner caused and may have
          contributed to a continuation of the sexually hostile environment.

234.    The MSU Defendants' responses were clearly unreasonable as Defendant
Nassar continued to sexually assault female athletes and other individuals until he was
discharged from the University in 2016.

235.    MSU Defendants had actual and constructive knowledge of, but were
recklessly and deliberately indifferent to, Defendant Nassar's sexual assault, battery,
molestation, and harassment in between 1997 and/or 1998 and 2016.

236.    Defendant MSU's failure to investigate and take corrective actions to
complaints of Defendant Nassar's sexual assault, battery, molestation, and harassment in
1997/1998, 1999, 2000, 2001/2002, 2004, and 2014 led to others, including Plaintiff, being
sexually assaulted, battered, molested, and harassed by Defendant Nassar.

237.    The MSU Defendants were notified again in 2014 of Defendant Nassar's conduct
when Amanda Thomashow reported she had an appointment with Defendant Nassar to
address hip pain and was sexually abused and molested by Defendant Nassar when he
cupped her buttocks, massaged her breast and vaginal area, and he became sexually aroused.

238.    Amanda Thomashow reported to Defendant MSU facts which were omitted or
withheld from the investigative report including but not limited to the following:

    a.    Defendant Nassar was sexually aroused while touching her;

    b.    The appointment with Defendant Nassar did not end until she
          physically removed his hands from her body.

239. Three months after initiating an investigation, in July 2014, Amanda Thomashow's complaints were dismissed and Defendant MSU determined she didn't understand the "nuanced difference" between sexual assault and an appropriate medical procedure and deemed Defendant Nassar's conduct "medically appropriate" and "not of a sexual nature."

240. In addition, MSU produced two different versions of the report in response to the July 2014 investigation—one version was sent to Amanda Thomashow and a different version was sent to Defendant Nassar and other MSU personnel.

241. Following the 2014 investigation, Defendant Nassar became subject to new institutional guidelines, including requirements that Defendant Nassar minimize or eliminate skin-to-skin contact and to have a chaperone in the room.

242. The MSU Defendants failed to adequately supervise or otherwise ensure Defendant Nassar complied with the newly imposed institutional guidelines even though the MSU Defendants had actual knowledge that Defendant Nassar posed a substantial risk of additional sexual abuse of the females whom he had unfettered access.

243. Defendant MSU's deliberate indifference before, during, and after the sexual assault, battery, molestation, and harassment of Plaintiff was in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*

244. Defendant MSU's failure to properly and appropriately investigate and take corrective action for the 1997/1998, 1999, 2000, 2001/2002, 2004, and 2014 complaints of Defendant Nassar's sexual assault, battery, molestation, and harassment resulted in Plaintiff being subject to further sexual assault, battery, molestation, harassment, and a sexually hostile environment.

-51-

245.    The MSU Defendants' failure to promptly and appropriately investigate and remedy and respond to the sexual assaults after they received notice subjected Plaintiff to further harassment and a sexually hostile environment, effectively denying them access to educational opportunities at MSU, including medical care.

246.    Defendant MSU's responses to the complaints 1997/1998, 1999, 2000, 2001/2002, 2004, and 2014 were clearly unreasonable as Defendant Nassar continued to sexually assault young females until he was discharged from the University in 2016.

247.    The MSU Defendants failed to offer counseling services to current or former patients of Defendant Nassar, including Plaintiff.

248.    As a direct and proximate result of the MSU Defendants' actions and inactions, Plaintiff have suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

**COUNT II**
**VIOLATION OF THE AFFORDABLE CARE ACT, 42 U.S.C. § 18116, *et seq***
**(AGAINST DEFENDANT MSU AND DEFENDANT MSU BOARD OF TRUSTEES)**

249.    Section 1557 of the Patient Protection and Affordable Care Act, which is codified at 42 U.S.C. § 18116, provides that:

> Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under . . . Title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.) . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits,

> subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments). The enforcement mechanisms provided for and available under . . . Title IX shall apply for purposes of violations of this subsection.

250.    Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. prohibits sex discrimination in programs that receive federal financial assistance.

251.    Plaintiff has a right under 42 U.S.C. § 18116 to receive health care services free from discrimination on the basis of sex.

252.    Plaintiff is an "individual" within the meaning of 42 U.S.C. § 18116.

253.    Defendant MSU receives Federal financial assistance within the meaning of 42 U.S.C. § 18116 because it receives federal financial assistance such as credits, subsidies, or contracts of insurance.

254.    Defendant Nassar's conduct and actions toward Plaintiff, that being nonconsensual digital vaginal and anal penetration, touching of Plaintiff's vaginal area, touching of Plaintiff's breasts, or other sexual touching as described herein this Complaint constitutes sex discrimination under Title IX and 42 U.S.C. § 18116.

255.    The conduct of Defendants MSU and MSU Trustees described above constitutes sex discrimination against Plaintiff.

256.    Defendants MSU and MSU Trustees perpetrated this discrimination with malice, deliberate disregard for, or deliberate or reckless indifference to Plaintiff's rights.

257.    The MSU Defendants' failure to promptly and appropriately investigate and remedy and respond to the sexual assaults after they received repeated notice of Defendant Nassar's wrongdoing subjected Plaintiff and countless others to further sexual harassment and sexual assaults as well as a sexually hostile environment-effectively denying them all

access to any health program or activity at MSU.

258.     As a direct and proximate result of the MSU Defendants' actions and inactions, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

259.     In the alternative, the actions or inaction of the MSU Defendants was deliberately indifferent or so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff and constitutes gross negligence that is the proximate cause of Plaintiff's damages. Plaintiff has suffered and continues to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiff was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

### COUNT III
### VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983
### (Against Defendant Klages, Defendant Strampel, Defendant Dietzel, and Defendant Kovan)

260.     Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

261.    Plaintiff, as a female, is a member of a protected class under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

262.    Plaintiff enjoyed the constitutionally protected Due Process right to be free from the invasion of bodily integrity through sexual assault, battery, molestation, and harassment.

263.    At all times pertinent hereto, Defendants Klages, Strampel, Kovan, Dietzel, Lemmen, and Nassar were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the State of Michigan and/or Defendant Michigan State University.

264.    The acts as alleged above amount to a violation of these clearly established constitutionally protected rights, of which reasonable persons in the MSU Defendants' position should have known.

265.    Defendants Klages, Strampel, Dietzel, and Kovan had, at all times pertinent hereto, the ultimate responsibility and authority to train and supervise their employees, agents, and representatives, in the appropriate manner of detecting, reporting, and preventing sexual abuse, assault, and molestation and as a matter of acts, custom, policy, and/or practice failed to do so with deliberate indifference.

266.    At all times pertinent hereto, Defendants Strampel, Dietzel, and Kovan acted in a supervisory role to Defendant Nassar through their roles at the MSU Sports Medicine Clinic, MSU's College of Osteopathic Medicine, and other affiliated MSU departments or institutions.

267.    At all times pertinent hereto, Defendant Klages, as the head coach of the MSU Women's Gymnastics Team, acted in a supervisory role to Defendant Nassar while he was

acting as team physician to the MSU Women's Gymnastics Team.

268.    As a matter of custom, policy, and/or practice, Defendant Klages had the ultimate responsibility and authority to investigate complaints from her athletes that involved allegations of impropriety or sexual assault by her team physician.

269.    As a matter of custom, policy, and/or practice, Defendants Klages, Strampel, Dietzel, and Kovan had and have the ultimate responsibility and authority to investigate complaints against their employees, agents, and representatives from all individuals including, but not limited to, students, visitors, faculty, staff, or other employees, agents, and/or representatives, and failed to do so with deliberate indifference.

270.    Defendant Lemmen's actions in assisting to exonerate Defendant Nassar from wrongdoing in response to the 2014 Title IX investigation and Defendant Lemmen's removal of Defendant Nassar's patient medical records from the MSU Sports Medicine Clinic at Defendant Nassar's request demonstrate the existence of an agreement or conspiracy between Defendant Nassar and Defendant Lemmen to deprive Plaintiff of their constitutional rights.

271.    Defendants Klages, Strampel, Dietzel, Lemmen, Kovan, and Nassar had a duty to prevent sexual assault, abuse, and molestation of MSU's patients, athletes, and other members of the public who utilize MSU's resources, those duties arising under the above-referenced constitutional rights.

272.    Defendant MSU's internal policies provide that "[a]ll University employees . . . are expected to promptly report sexual misconduct or relationship violence that they observe or learn about and that involves a member of the University community (faculty, staff or student) or occurred at a University event or on University property." They further

-56-

provide that "[t]he employee must report all relevant details about the alleged relationship violence or sexual misconduct that occurred on campus or at a campus-sponsored event."

273. This policy was violated in or around 1997 and/or 1998 when Larissa Boyce and Jane B8 Doe reported sexual assault, abuse, and molestation by Defendant Nassar to Defendant Kathie Klages, and Defendant Klages refused to report the incident and instead intimidated, humiliated, and embarrassed Larissa Boyce and Jane B8 Doe.

274. Defendant Klages's violation of the policy by refusing to take any action in response to legitimate and credible claims of sexual assault by Larissa Boyce and Jane B8 Doe resulted in the continued violations of Plaintiff' constitutional rights, including her Due Process right to bodily integrity, which includes the right to be free from sexual assaults.

275. Defendant Klages's actions as alleged above also demonstrate the existence of an agreement or conspiracy between Defendant Nassar and Defendant Klages to deprive Plaintiff of their constitutional rights.

276. By failing to prevent the aforementioned sexual assault, abuse, and molestation upon Plaintiff, and by failing to appropriately respond to numerous reports of Defendant Nassar's sexual assault, abuse, and molestation in a manner that was so clearly unreasonable it amounted to deliberate indifference, Defendants Klages, Strampel, Dietzel, Lemmen, Kovan, and Nassar are liable to Plaintiff pursuant to 42 U.S.C. § 1983.

277. Defendants Klages, Strampel, Dietzel, Lemmen, Kovan, and Nassar are also liable to Plaintiff under 42 U.S.C. § 1983 for maintaining customs, policies, and practices which deprived Plaintiff of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

278. Defendants Klages, Strampel, Dietzel, Lemmen, and Kovan tolerated,

authorized and/or permitted a custom, policy, practice or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline Defendant Nassar, with the result that Defendant Nassar was allowed to violate the constitutional rights of persons such as Plaintiff with impunity.

279.    As a direct and proximate result of the MSU Defendants' and Defendant Nassar's actions and/or inactions, Plaintiff has suffered and continues to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and have sustained and continues to sustain loss of earning and loss of earning capacity.

280.    In the alternative, the actions or inactions of Defendants Klages, Strampel, Dietzel, Lemmen, and Kovan were so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff and constitutes gross negligence that is the proximate cause of Plaintiff's damages. Plaintiff has suffered and continues to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiff was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## COUNT IV
### FAILURE TO TRAIN AND SUPERVISE, 42 U.S.C. § 1983
### (Against Defendants Klages, Strampel, Deitzel, and Kovan)

281.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

282.    Defendants Klages, Strampel, Dietzel, and Kovan had, at all times pertinent hereto, the ultimate responsibility and authority to train and supervise their employees, agents, and/or representatives, including Defendant Nassar and all faculty and staff, regarding their duties toward students, faculty, staff, and visitors.

283.    Defendants Klages, Strampel, Dietzel, and Kovan failed to train and supervise its employees, agents, and/or representatives, including all faculty and staff, regarding the following duties:

    a.    Perceive, report, and stop inappropriate sexual conduct on campus;

    b.    Provide diligent supervision over student-athletes and other individuals;

    c.    Report suspected incidents of sexual abuse or sexual assault;

    d.    Ensure the safety of all students, faculty, staff, and visitors to Defendant MSU's campuses premises;

    e.    Provide a safe environment for all students, faculty, staff, and visitors to Defendant MSU's premises free from sexual harassment; and,

    f.    Properly train faculty and staff to be aware of their individual responsibility for creating and maintaining a safe environment.

284.    The above list of duties is not exhaustive.

285.    Defendants Klages, Strampel, Dietzel, and Kovan failed to adequately train coaches, trainers, medical staff, and others regarding the aforementioned duties which led to violations of Plaintiff' rights.

-59-

286.    As a result, Defendants Klages, Strampel, Dietzel, and Kovan deprived Plaintiff of rights, including those described herein, secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. §1983.

287.    As a direct and proximate result of Defendants' actions and/or inactions, Plaintiff has suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earning and loss of earning capacity.

288.    In the alternative, the actions or inaction of the Defendants Klages, Strampel, Dietzel, and Kovan were so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff and constitutes gross negligence that is the proximate cause of Plaintiff's damages. Plaintiff has suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiff was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

<u>COUNT VII</u>
<u>GROSS NEGLIGENCE</u>
<u>(Against the MSU Defendants and Defendant Nassar)</u>

289.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

290.    The MSU Defendants owed Plaintiff a duty of ordinary care to ensure her safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, representatives, and/or agents, including Defendant Nassar.

291.    Defendant Nassar owed Plaintiff a duty to use ordinary care in providing medical treatment as an employee, agent, and/or representative of the MSU Defendants.

292.    A special, confidential, and fiduciary relationship was created between Plaintiff and Defendant Nassar when Plaintiff sought medical treatment from Defendant Nassar in the course of his employment, agency, and/or representation of the MSU Defendants, resulting in Defendant Nassar owing Plaintiff a duty to use due care.

293.    A special, confidential, and fiduciary relationship was created and existed at all times pertinent hereto between the MSU Defendants and Defendant Nassar, as described herein this Complaint, resulting in The MSU Defendants owing Plaintiff a duty to use due care.

294.    The MSU Defendants and their employees, agents, and/or representatives had a duty to report suspected sexual abuse.

295.    The MSU Defendants had notice of complaints of a sexual nature related to Defendant Nassar's purported treatment with young girls and women through Defendant MSU employees, agents, and/or representatives as early as 1997/1998, again in 1999, again in 2000, again in 2001/2002, again in 2004, and again in 2014, as described herein this

Complaint.

296.    The MSU Defendants and their employees, agents, and/or representatives failed to report sexual abuse about which they knew or should have known in 1997/1998, 1999, 2000, 2001/2002, 2004, and 2014, as described herein this Complaint.

297.    The MSU Defendants' failure to adequately train and supervise Defendant Nassar, especially after the MSU Defendants knew or should have known of complaints regarding Defendant Nassar's conduct, was so reckless as to demonstrate a substantial lack of concern for whether injury resulted to Plaintiff.

298.    Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff in the course of his employment, agency, and/or representation of the MSU Defendants under the guise of proper medical treatment was so reckless as to demonstrate a substantial lack of concern for whether injury resulted to Plaintiff.

299.    Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff in the course of his employment, agency, and/or representation of the MSU Defendants and under the guise of rendering "medical treatment" was so reckless as to demonstrate a substantial lack of concern for whether injury would result to Plaintiff.

300.    The MSU Defendants' conduct and the conduct of their individual employees and agents demonstrated a willful disregard for precautions to ensure Plaintiff's safety.

301.    The MSU Defendants knew or should have known of complaints pertaining to Defendant Nassar's nonconsensual sexual touching and assaults that occurred under the guise of medical treatment.

302.    The MSU Defendants' conduct demonstrated a willful disregard for substantial risks to Plaintiff.

303. The MSU Defendants breached duties owed to Plaintiff and were grossly negligent when they conducted themselves in the manner described herein this Complaint. These acts by the MSU Defendants were committed with reckless disregard to Plaintiff's safety, health, constitutional and/or statutory rights, and with substantial lack of concern to whether injury resulted to Plaintiff.

304. The MSU Defendants failed to warn or advise current and former patients of Defendant Nassar, including Plaintiff, that allegations could surface that in fact the treatments that the patients received was not medical treatment at all but was potentially sexual assault.

305. The MSU Defendants failed to offer counseling services to current of former patients of Defendant Nassar, including Plaintiff.

306. As a direct and proximate result of the MSU Defendants' and Defendant Nassar's actions and/or inactions, Plaintiff has suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earning and loss of earning capacity.

307. As a direct and/or proximate result of Defendants' gross negligence, Plaintiff has suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep

disorders, nightmares, psychological injuries, and physical injuries. Plaintiff was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**COUNT VIII**
**NEGLIGENCE**
**(Against the MSU Defendants and Defendant Nassar)**

308.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

309.    The MSU Defendants owed Plaintiff a duty to use ordinary care to ensure her safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, agents, and/or representatives, including Defendant Nassar.

310.    Defendant Nassar owed Plaintiff a duty to use ordinary care in providing medical treatment as an employee, agent, and/or representative of the MSU Defendants.

311.    A special, confidential, and fiduciary relationship was created between Plaintiff and Defendant Nassar when Plaintiff sought medical treatment from Defendant Nassar in the course of his employment, agency, and/or representation of the MSU Defendants, resulting in Defendant Nassar owing Plaintiff a duty to use ordinary care in his undertakings.

312.    A special, confidential, and fiduciary relationship was created and existed at all times pertinent hereto between the MSU Defendants and Defendant Nassar, as described herein this Complaint, resulting in The MSU Defendants owing Plaintiff a duty to use ordinary care in their undertakings.

-64-

313.    The MSU Defendants and their employees, agents, and/or representatives had a duty to report suspected sexual abuse.

314.    The MSU Defendants had notice of complaints of a sexual nature related to Defendant Nassar's purported treatment with young girls and women through Defendant MSU employees, agents, and/or representatives as early as 1997/1998, again in 1999, again in 2000, again in 2001/2002, again in 2004, and again in 2014, as described herein this Complaint.

315.    The MSU Defendants and their employees, agents, and/or representatives failed to report sexual abuse about which they knew or should have known in 1997/1998, 1999, 2000, 2001/2002, 2004, and 2014, as described herein this Complaint.

316.    The MSU Defendants knew or should have known of the foreseeability of sexual abuse with respect to youth and collegiate sports.

317.    The MSU Defendants' failure to properly address, investigate, and remedy complaints against Defendant Nassar's conduct was a breach of the duty to use ordinary care.

318.    Defendant Nassar's conduct in sexually assaulting, battering, molesting, and harassing Plaintiff in the course of his employment, agency, and/or representation of the MSU Defendants under the guise of proper medical treatment was a breach of the duty to use ordinary care.

319.    The MSU Defendants' failure to adequately train and supervise Defendant Nassar breached the duty of ordinary care.

320.    The MSU Defendants failed to warn or advise current and former patients of Defendant Nassar, including Plaintiff, that allegations could surface that in fact the

treatments that the patients received was not medical treatment at all but was potentially sexual assault.

321.    The MSU Defendants failed to offer counseling services to current of former patients of Defendant Nassar, including Plaintiff.

322.    As a direct and proximate result of Defendants' actions and/or inactions, Plaintiff has suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earning and loss of earning capacity.

**COUNT IX**
**VICARIOUS LIABILITY**
**(Against the MSU Defendants**)

323.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

324.    Vicarious liability is indirect responsibility imposed by operation of law where an employer is bound to keep its employees within their proper bounds and is responsible if it fails to do so.

325.    Vicarious liability essentially creates agency between the principal and its agent so that the principal is held to have done what the agent has done.

326.    The MSU Defendants employed and/or held Defendant Nassar out to be its employee, agent, and/or representative from approximately 1996 to 2016.

327.   Defendant MSU's website contains hundreds of web pages portraying Defendant Nassar as a distinguished member of Defendant MSU's College of Osteopathic Medicine, Division of Sports Medicine.

328.   A special, confidential, and fiduciary relationship was created and existed at all times pertinent hereto between the MSU Defendants and Defendant Nassar, as described herein this Complaint, resulting in The MSU Defendants owing Plaintiff a duty to prevent them from suffering Defendant Nassar's sexual assault, battery, molestation, and discrimination.

329.   The MSU Defendants are vicariously liable for the actions of Defendant Nassar, as described above, that were performed during the course of his employment, agency, and/or representation with the MSU Defendants and while he had access to young female patients on Defendant MSU's campus and premises through its College of Osteopathic Medicine and Division of Sports Medicine.

330.   The MSU Defendants had actual and/or constructive knowledge of Defendant Nassar's propensity for sexually assaulting, battering, molesting, and harassing females on several occasions under the guise of medical treatment and during the course of his employment, agency, and/or representation with the MSU Defendants, beginning in 1997 and/or 1998, as described herein this Complaint.

331.   The MSU Defendants had actual and/or constructive knowledge of Defendant Nassar's propensity for sexually assaulting, battering, molesting, and harassing his patients and other females under the guise of medical treatment and during the course of his employment, agency, and/or representation with the MSU Defendants, and took no action to prevent such conduct.

-67-

332. It was reasonably foreseeable that Defendant Nassar would continue to sexually assault, batter, molest, and harass females under the guise of medical treatment during the course of his employment, agency, and/or representation with the MSU Defendants, with the actual and/or constructive knowledge the MSU Defendants had of such conduct.

333. As a direct and proximate result of Defendant Nassar's actions carried out in the course of his employment, agency, and/or representation of the MSU Defendants, Plaintiff have suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earning and loss of earning capacity.

### COUNT X
### EXPRESS/IMPLIED AGENCY
### (Against the MSU Defendants)

334. Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

335. An agent is a person who is authorized by another to act on its behalf.

336. The MSU Defendants intentionally and/or negligently made representations that Defendant Nassar was their employee, agent, and/or representative.

337. On the basis of those representations, Plaintiff reasonably believed that Defendant Nassar was acting as an employee, agent, and/or representative of the MSU Defendants.

338. Plaintiff was injured as a result of Defendant Nassar's sexual assault, abuse,

and molestation, as described above. These acts were performed during the course of Defendant Nassar's employment, agency, and/or representation with the MSU Defendants while he had access to young females.

339. Plaintiff was injured because she relied on the MSU Defendants to provide employees, agents, and representatives who exercise reasonable skill and care.

340. As a direct and proximate result of Defendant Nassar's actions carried out in the course of his employment, agency, and/or representations of the MSU Defendants, Plaintiff has suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earning and loss of earning capacity.

341. In the alternative, the actions or inactions of the MSU Defendants were so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff and constitutes gross negligence that is the proximate cause of Plaintiff's damages. Plaintiff has suffered and continues to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiff was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

-69-

## COUNT XI
### NEGLIGENT SUPERVISION
### (Against MSU Defendants)

342.     Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

343.     The MSU Defendants had a duty to provide reasonable supervision of their employee, agent, and/or representative, Defendant Nassar, while he was in the course of his employment, agency, and/or representation with the MSU Defendants and while he interacted with young females, including Plaintiff.

344.     Given the known sexual abuse in youth sports and gymnastics, it was reasonably foreseeable that Defendant Nassar, who had prior allegations against him, had and/or would sexually abuse young females, including Plaintiff, unless properly supervised.

345.     The MSU Defendants by and through their employees, agents, representatives, managers, and/or assigns, such as Kathie Klages, President Simon, President McPherson, Dean Strampel, or Dr. Kovan, knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children.

346.     The MSU Defendants breached their duty to provide reasonable supervision of Defendant Nassar, and permitted Defendant Nassar, who was in a position of trust and authority, to commit acts against Plaintiff.

347.     The aforementioned sexual assault, abuse, and molestation occurred while Plaintiff and Defendant Nassar were on the premises of Defendant MSU and while Defendant Nassar was in the course of his employment, agency, and/or representation with the MSU Defendants.

348.    The MSU Defendants tolerated, authorized, and/or permitted a custom, policy, practice, or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline such individuals, resulting in the allowance of Defendant Nassar to violate the rights of persons such as Plaintiff with impunity.

349.    The MSU Defendants failed to warn or advise current and former patients of Defendant Nassar, including Plaintiff, that allegations could surface that in fact the treatments that the patients received was not medical treatment at all but was potentially sexual assault.

350.    The MSU Defendants failed to offer counseling services to current of former patients of Defendant Nassar, including Plaintiff.

351.    As a direct and proximate result of the MSU Defendants' failure to adequately supervise, Plaintiff has suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

352.    In the alternative, the MSU Defendants' failure to supervise was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff and constitutes gross negligence that is the proximate cause of Plaintiff's damages. Plaintiff has suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress

disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiff was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## COUNT XII
## NEGLIGENT FAILURE TO WARN OR PROTECT
## (Against the MSU Defendants)

353.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

354.    The MSU Defendants knew or should have known that Defendant Nassar posed a risk of harm to Plaintiff and/or others in Plaintiff's situation.

355.    The MSU Defendants knew or should have known that Defendant Nassar committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

356.    As early as 1997 and/or 1998, the MSU Defendants had direct and/or constructive knowledge of Defendant Nassar's dangerous conduct and failed to respond reasonably and responsibly.

357.    The MSU Defendants had a duty to warn or protect Plaintiff and others in Plaintiff' situation against the risk of injury by Defendant Nassar.

358.    The special, trusting, confidential, and fiduciary relationship between the MSU Defendants and Defendant Nassar, as an employee, agent, and/or representative of the MSU Defendants, created a duty for the MSU Defendants to disclose information regarding Defendant Nassar's sexual conduct.

359. The MSU Defendants breached the duty owed to Plaintiff by failing to warn Plaintiff and/or by failing to take reasonable steps to protect Plaintiff from Defendant Nassar.

360. The MSU Defendants breached the duties to protect owed to Plaintiff by failing to:

      a.      Respond to allegations of sexual assault, abuse, and molestation;

      b.      Detect and/or uncover evidence of sexual assault, abuse, and molestation; and

      c.      Investigate, adjudicate, and terminate Defendant Nassar's employment with Defendant MSU prior to 2016.

361. The MSU Defendants violated Plaintiff's rights by failing to adequately screen, counsel, and/or discipline Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician at an educational institution, resulting in a violation of Plaintiff's rights.

362. The MSU Defendants willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiff from Defendant Nassar's conduct.

363. As a direct and proximate result of the MSU Defendants' failure to warn or protect, Plaintiff has suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earning and loss of earning capacity.

364. In the alternative, the MSU Defendants' failure to warn or protect was so reckless as to demonstrate a substantial lack of concern for whether an injury would result

to Plaintiff and constitutes gross negligence that is the proximate cause of Plaintiff's damages. Plaintiff has suffered and continues to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiff was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

### COUNT XIII
### NEGLIGENT FAILURE TO TRAIN OR EDUCATE
### (Against the MSU Defendants)

365.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

366.    The MSU Defendants had a duty to take reasonable protective measures to protect Plaintiff and others in Plaintiff's situation against the risk of injury by Defendant Nassar, including the duty to train or educate Plaintiff and other individuals in Plaintiff's situation, about how to avoid a risk of sexual assault and/or sexual abuse by Defendant Nassar.

367.    The MSU Defendants breached the duty owed to Plaintiff to take reasonable protective measures to protect Plaintiff, and other patients of Defendant Nassar, by failing to properly train or educate Plaintiff and other individuals in Plaintiff's situation, about how to avoid a risk of sexual assault and/or sexual abuse by Defendant Nassar.

368.    The MSU Defendants had a duty to train and educate Defendant Nassar in a

reasonable manner in regards to Defendant Nassar's treatment of females in his capacity as an employee, agent, and/or representative of the MSU Defendants.

369. The MSU Defendants breached the duty owed to Plaintiff by failing to properly train or educate Defendant Nassar in a reasonable manner in regards to Defendant Nassar's treatment of females in his capacity as an employee, agent, and/or representative of the MSU Defendants.

370. The MSU Defendants failed to implement reasonable safeguards to:

   a.   Prevent acts of sexual assault, abuse, and molestation by Defendant Nassar; and,

   b.   Avoid placing Defendant Nassar in positions where he would have unsupervised contact and interaction with Plaintiff and other young women.

371. As a direct and proximate result of the MSU Defendants' failure to train or educate, Plaintiff has suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earning and loss of earning capacity.

372. In the alternative, the MSU Defendants' failure to train or educate was so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff and constitutes gross negligence that is the proximate cause of Plaintiff's damages. Plaintiff has suffered and continues to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress,

embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiff was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

**COUNT XIV**
**NEGLIGENT RETENTION**
**(Against the MSU Defendants)**

373.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

374.    The MSU Defendants owed a duty to Plaintiff and others in Plaintiff's situation when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising employees, agents, and/or representatives to exercise ordinary care.

375.    The MSU Defendants breached the duties owed to Plaintiff by failing to adequately investigate, report, and address complaints about Defendant Nassar's conduct, which the MSU Defendants knew or should have known.

376.    The MSU Defendants breached the duties owed to Plaintiff when the MSU Defendants retained Defendant Nassar as an employee, agent, and/or representative after the MSU Defendants discovered or should have reasonably discovered Defendant Nassar's conduct, which reflected a propensity for sexual misconduct.

377.    The MSU Defendants' failure to act in accordance with the standard of care resulted in Defendant Nassar gaining access to and sexually assaulting and/or sexually abusing Plaintiff and an unknown number of other individuals.

378.    The aforementioned conduct of the MSU Defendants in credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising of Defendant Nassar created a foreseeable risk of harm to Plaintiff and other minors and young adults.

379.    As a direct and proximate result of the MSU Defendants' actions in retaining Defendant Nassar, Plaintiff has suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earning and loss of earning capacity.

380.    In the alternative, the MSU Defendants' actions in retaining Defendant Nassar were so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff and constitutes gross negligence that is the proximate cause of Plaintiff's damages. Plaintiff has suffered and continues to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiff was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and earning capacity.

## COUNT XV
### FRAUD AND MISREPRESENTATION
### (Against the MSU Defendants)

381.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

382.    From approximately 1996 to September 2016, the MSU Defendants represented to Plaintiff and the public that Defendant Nassar was a competent, safe, and highly regarded physician.

383.    By representing that Defendant Nassar was a team physician and an athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, the MSU Defendants represented to Plaintiff and the public that Defendant Nassar was safe, trustworthy, and of high moral and ethical repute and that Plaintiff and the public need not worry about being harmed by Defendant Nassar.

384.    The aforementioned representations were false when they were made because Defendant Nassar had and was continuing to sexually assault, abuse, and molest an unknown number of patients, including Plaintiff, and other individuals.

385.    The MSU Defendants knew the aforementioned representations regarding Defendant Nassar were false because there had been previous complaints in 1997/1998, 1999, 2000, 2001/2002, 2004, and 2014 to Defendant MSU employees, agents, and/or representatives about Defendant Nassar's sexual assault, battery, molestation, and harassment.

386.    Although Defendant MSU had been informed of Defendant Nassar's conduct, the MSU Defendants failed to investigate, remedy, or in any way address the 1997/1998, 1999, 2000, 2001/2002, 2004, and 2014 complaints against Defendant Nassar.

387. The MSU Defendants continued to portray Defendant Nassar as a competent and safe physician.

388. Plaintiff relied on the MSU Defendants' portrayal of Defendant Nassar when she sought his medical treatment for her injuries.

389. Plaintiff and other members of the public relied on the assertions of the MSU Defendants and several other young females continued to seek medical treatment from Defendant Nassar in the wake of known concerns and dangers.

390. Defendant Nassar was permitted to continue employment and sexually assault, abuse, and molest an unknown number of other individuals, despite Plaintiff Amanda Thomashow's 2014 complaint against Defendant Nassar to Kristine M. Moore, Assistant Director for Institutional Equity at the MSU Office for Inclusion and Intercultural Initiatives.

391. The MSU Defendants disregarded Plaintiff Amanda Thomashow's 2014 complaint because of Defendant MSU's culture which included existence of a sexually hostile environment on Defendant MSU's campus and premises and the University's failure to address complaints of sexual harassment, including sexual violence in a prompt and equitable manner which in turn caused and may have contributed to a continuation of the sexually hostile environment, Defendant Nassar was permitted to continue employment and sexually abuse, assault, and molest Plaintiff and an unknown number of other individuals.

392. The MSU Defendants intentionally withheld material opinions, findings, evidence, and conclusions from Plaintiff Amanda Thomashow and other Plaintiff in regard to the findings of Plaintiff Amanda Thomashow's Title IX investigation conducted in 2014, as described herein this Complaint.

393.    Between the time of Plaintiff Amanda Thomashow's 2014 complaint and 2016, the MSU Defendants continued to portray Defendant Nassar as a safe and competent physician.

394.    The MSU Defendants, by and through their representatives, also affirmatively took steps to attempt to dissuade Plaintiff Amanda Thomashow from speaking with police about her complaints against Defendant Nassar.

395.    The MSU Defendants, by and through their representatives, also affirmatively took steps to attempt to dissuade other potential victims of Defendant Nassar from speaking with police or the media by advising the potential victims to respond "No comment" to any requests by media or police.

396.    These actions of MSU Defendants, including the disregard of Plaintiff Amanda Thomashow's complaints, were purportedly done as an attempt to hide the known instances of sexual abuse committed by Defendant Nassar.

397.    As a result of Plaintiff's and the public's reliance on the MSU Defendants' fraudulent misrepresentations regarding Defendant Nassar, Plaintiff and others in Plaintiff's situation were sexually assaulted, abused, and molested by Defendant Nassar during appointments.

398.    As a direct and proximate result of the MSU Defendants' actions and knowingly false representations, Plaintiff has suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining

the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

**COUNT XVI**
**GROSS NEGLIGENCE**
**(Against Defendant USAG and Defendant Nassar)**

399.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

400.    A special, confidential, and fiduciary relationship was created between Plaintiff and Defendant Nassar when Plaintiff sought medical treatment from Defendant Nassar, acting in the course of his employment, agency, and/or representation of Defendant USAG, and resulting in Defendant Nassar owing Plaintiff a duty to use due care.

401.    Defendant Nassar owed Plaintiff a duty to use due care in providing medical treatment as an employee, agent, and/or representative of Defendant USAG.

402.    Defendant USAG owed the public and Plaintiff a duty to use due care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with its employees, representatives, and/or agents, including Defendant Nassar.

403.    Defendant USAG knew or should have known of complaints pertaining to Defendant Nassar's nonconsensual sexual touching and assaults that occurred under the guise of medical treatment.

404.    Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff in the course of his employment, agency, and/or representation of Defendant USAG under the guise of proper medical treatment was so reckless as to demonstrate a substantial lack of concern for whether injury resulted to Plaintiff.

405.    Defendant USAG's failure to adequately supervise Defendant Nassar was so

reckless as to demonstrate a substantial lack of concern for whether injury resulted to Plaintiff.

406. Defendant USAG's conduct demonstrated a willful disregard for precautions to ensure Plaintiff's safety.

407. Defendant USAG's conduct demonstrated a willful disregard for substantial risks to Plaintiff.

408. Defendant USAG breached its duties owed to Plaintiff and was grossly negligent when it conducted itself in the manner described above, including, but not limited to, failing to notify Defendant MSU about the reasons for Defendant Nassar's separation from Defendant USAG in 2015 and, more broadly, the issues surrounding sexual abuse and warning signs and reporting requirements.

409. These acts by Defendant USAG were committed with reckless disregard to Plaintiff's safety, health, constitutional and/or statutory rights, and with substantial lack of concern to whether injury resulted to Plaintiff.

410. As a direct and proximate result of Defendant USAG's and Defendant Nassar's actions and/or inactions, Plaintiff has suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

411. In the alternative, the actions or inactions of Defendant USAG and Defendant Nassar were so reckless as to demonstrate a substantial lack of concern for whether an injury

would result to Plaintiff has suffered and continue and constitutes gross negligence that is the proximate cause of Plaintiff' damages. Plaintiff has suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical injuries. Plaintiff was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

## COUNT XVII
### NEGLIGENCE
### (Against Defendant USAG and Defendant Nassar)

412.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

413.    A special, confidential, and fiduciary relationship was created between Plaintiff and Defendant Nassar when Plaintiff sought medical treatment from Defendant Nassar in the course of his employment, agency, and/or representation of Defendant USAG, resulting in Defendant Nassar owing Plaintiff a duty to use ordinary care.

414.    Defendant Nassar owed Plaintiff a duty to use ordinary care in providing medical treatment.

415.    Defendant USAG owed the public and Plaintiff a duty to use ordinary care to ensure their safety and freedom from sexual assault, abuse, and molestation while interacting with their employees, agents, and/or representatives, including Defendant Nassar.

416.    Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff in the course of his employment, agency, and/or representation of Defendant USAG under the guise of proper medical treatment was a breach of the duty to use ordinary care.

417.    Defendant USAG's failure to adequately train and supervise Defendant Nassar breached the duty of ordinary care.

418.    Defendant USAG's failure to properly investigate, address, and remedy complaints regarding Defendant Nassar's conduct was a breach of the duty to use ordinary care.

419.    Defendant USAG's failure to inform the public, including individuals Defendant USAG had referred to Defendant Nassar for treatment, of the allegations leading to Defendant Nassar's separation for Defendant USAG was a breach of the duty to use ordinary care.

420.    Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff was a breach of the duty to use ordinary care.

421.    As a direct and proximate result of Defendant USAG's and Defendant Nassar's actions and/or inactions, Plaintiff has suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

### COUNT XVIII
### VICARIOUS LIABILITY
### (Against Defendant USAG)

422.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

423.    Vicarious liability is indirect responsibility imposed by operation of law where an employer is bound to keep its employees within their proper bounds and is responsible if it fails to do so.

424.    Vicarious liability essentially creates agency between the principal and its agent so that the principal is held to have done what the agent has done.

425.    Defendant USAG's website contains sites portraying Defendant Nassar as the recipient of distinguished awards and boasts him as having been "instrumental" to the success of USA gymnastics.

426.    Defendant USAG employed and/or held Defendant Nassar out to be its employee, agent, and/or representative from approximately 1986 to 2015.

427.    A special, confidential, and fiduciary relationship was created and existed, at all times pertinent hereto, between the MSU Defendants and Defendant Nassar, as described herein this Complaint, resulting in The MSU Defendants owing Plaintiff a duty to prevent them from Defendant Nassar's sexual assault, battery, molestation, and discrimination.

428.    Defendant USAG is vicariously liable for the actions of Defendant Nassar, as described above, that were performed during the course of his employment, agency, and/or representation with Defendant USAG.

429.    Defendant USAG had actual and/or constructive knowledge of Defendant Nassar sexually assaulting, battering, molesting, and harassing young females on several

-85-

occasions under the guise of medical treatment and during the course of his employment, agency, and/or representation with Defendant USAG, beginning in 1997 and/or 1998, including, but not limited to, the following knowledge:

a.  Upon information and belief, in 1998, Defendant USAG received a complaint about Defendant Nassar's sexual abuse by a parent of Jane A71 Doe. The complaint was made directly to US Olympic Gymnastics Head Coach, John Geddert, who was the head coach for the US World Gymnastics team, and who is a longtime agent of USAG.

b.  Upon information and belief, the parent of Plaintiff Jane A71 Doe, also complained of Nassar's sexual abuse to other USAG coaches while Plaintiff Jane A 71 Doe was engaged in gymnastics activities at the Twistars' facility, which is a USAG registered gymnastics club.

c.  Upon information and belief, based on reports made by the Indianapolis Star, "at least seven women now say they raised concerns about Nassar starting in the late 1990 's."

d.  During Nassar's preliminary examination on May 12, 2017 in the 55th District Court in Ingham County, Michigan, a young woman testified regarding an instance of sexual assault that occurred at Twistars' facility in Dimondale, Michigan in approximately 2010 when she was fifteen years old. She testified that, "mostly all I remember is [Nassar} doing the treatment on me with his fingers in my vagina, massaging my back with a towel over my butt, and John [Geddert] walking in and making a joke that I guess my back really did hurt, and then I was uncomfortable because John [Geddert] was in there during that."

e.  Altogether, between 1999 and 2016, at least thirty-two (32) USAG gymnasts were sexually abused by Larry Nasser while participating in USAG-sanctioned events, at USAG's famed Karolyi Ranch, and at the USA Gymnastics Club, Twistars. Upon information and belief, the living quarters and scheduling routines of these gymnasts were such that it was nearly impossible for USAG coaches, USAG trainers, and USAG agents to not know what Larry Nasser was doing.

430.  Defendant USAG had actual and/or constructive knowledge of Defendant Nassar's propensity for sexually assaulting, battering, molesting, and harassing his patients and other females under the guise of medical treatment and during the course of his

employment, agency, and/or representation with Defendant USAG, as described herein this Complaint, and took no action to prevent such conduct.

431. It was reasonably foreseeable that Defendant Nassar would continue to sexually assault, batter, molest, and harass females under the guise of medical treatment and during the course of his employment, agency, and/or representation with Defendant USAG, with the actual and/or constructive knowledge Defendant USAG had of such conduct.

432. As a direct and proximate result of Defendant USAG's actions and/or inactions, Plaintiff has suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

**COUNT XIX**
**EXPRESS/IMPLIED AGENCY**
**(Against Defendant USAG)**

433. Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

434. An agent is a person who is authorized by another to act on its behalf.

435. Defendant USAG intentionally and/or negligently made representations that Defendant Nassar was its employee, agent, and/or representative.

436. On the basis of those representations, Plaintiff reasonably believed that Defendant Nassar was acting as an employee, agent, and/or representative of Defendant USAG.

437. Upon information and belief, Defendant USAG referred significant numbers of

gymnasts, including JANE DOE KJ, to Defendant Nassar for medical treatment at his office on Defendant MSU's campus.

438.    Plaintiff was injured as a result of Defendant Nassar's sexual assault, abuse, and molestation, as described above. These acts were performed during the course of Defendant Nassar's employment, agency, and/or representation with Defendant USAG.

439.    Plaintiff was injured because they relied on Defendant USAG to provide employees, agents, and representatives who exercise reasonable skill and care.

440.    As a direct and proximate result of Defendant Nassar's actions carried out in the course of his employment, agency, and/or representation of Defendant USAG, Plaintiff has suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

### COUNT XX
### NEGLIGENT SUPERVISION
### (Against Defendant USAG)

441.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

442.    Defendant USAG had a duty to provide reasonable supervision of its employee, agent, and/or representative, Defendant Nassar, while he was in the course of his employment, agency, and/or representation with Defendant USAG and while he interacted with young female athletes and Plaintiff.

443.     Given the known sexual abuse in youth sports and gymnastics, it was reasonably foreseeable that Defendant Nassar, who had prior allegations against him, would sexually abuse his patients, including Plaintiff, unless properly supervised.

444.     Defendant USAG by and through its employees, agents, managers, and/or assigns, such as Mr. Penny and Mr. Colarassi, knew or reasonably should have known of Defendant Nassar's conduct and/or that Defendant Nassar was an unfit employee, agent, and/or representative because of his sexual interest in children and young adults.

445.     Defendant USAG breached its duty to provide reasonable supervision of Defendant Nassar, and permitted Defendant Nassar, who was in a position of trust and authority, to sexually assault, abuse, molest, and harass Plaintiff.

446.     The aforementioned sexual assault, abuse, molestation, and harassment occurred while Defendant Nassar was in the course of his employment, agency, and/or representation with Defendant USAG.

447.     Defendant USAG tolerated, authorized, and/or permitted a custom, policy, practice, or procedure of insufficient supervision and failed to adequately screen, counsel, or discipline such individuals, resulting in the allowance of Defendant Nassar to violate the rights of persons such as Plaintiff with impunity.

448.     As a direct and proximate result of the Defendant USAG's failure to adequately supervise, Plaintiff have suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining

the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

## COUNT XXI
### NEGLIGENT FAILURE TO WARN OR PROTECT
### (Against Defendant USAG)

449.     Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

450.     Given the direct or indirect knowledge of sexual abuse in youth sports, and in particular gymnastics, it was reasonably foreseeable that sexual abuse of young females may occur if proper procedures were not put in place by Defendant USAG.

451.     Defendant USAG knew or should have known that Defendant Nassar posed a risk of harm to Plaintiff and/or others in Plaintiff's situation.

452.     Defendant USAG knew or should have known that Defendant Nassar committed sexual assault, abuse, and molestation and/or was continuing to engage in such conduct.

453.     Defendant USAG had actual and/or constructive knowledge as to the dangerous conduct of Defendant Nassar and failed to act reasonably and responsibly in response.

454.     Defendant USAG had a duty to warn or protect the public, Plaintiff, and others in Plaintiff's situation against the risk of injury by Defendant Nassar.

455.     The special, trusting, confidential, and fiduciary relationship between Defendant Nassar, in his capacity as an employee, agent, and/or representative of Defendant USAG, and Plaintiff created a duty to disclose this information.

456.     Defendant USAG breached the duty owed to Plaintiff by failing to warn the

public and Plaintiff and/or by failing to take reasonable steps to protect the public and Plaintiff from Defendant Nassar.

457.    Defendant USAG breached its duties to protect Plaintiff by failing to detect and/or uncover evidence of sexual assault, abuse, molestation, and harassment.

458.    Defendant USAG breached its duty to protect Plaintiff by failing to investigate, adjudicate, suspend, and/or ban Defendant Nassar from USAG affiliation.

459.    Defendant failed to adequately screen, counsel and/or discipline Defendant Nassar for physical and/or mental conditions that might have rendered him unfit to discharge the duties and responsibilities of a physician in his capacity as an employee, agent, and/or representative of Defendant USAG, resulting in violations of Plaintiff's rights.

460.    Defendant USAG willfully refused to notify, give adequate warning, and implement appropriate safeguards to protect Plaintiff from Defendant Nassar's conduct.

461.    As a direct and proximate result of the Defendant USAG's failure to warn or protect, Plaintiff have suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

## COUNT XXII
### NEGLIGENT FAILURE TO TRAIN OR EDUCATE
### (Against Defendant USAG)

462.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

463. Defendant USAG had a duty to protect the public and Plaintiff and others in Plaintiff's situation against the risk of injury by Defendant Nassar.

464. Defendant USAG breached the duty owed to the public and Plaintiff to take reasonable protective measures to protect Plaintiff, and others in Plaintiff's situation, by failing to properly train or educate Plaintiff, and other individuals in Plaintiff's situation, about how to avoid a risk of sexual assault and/or sexual abuse, including sexual assault and/or sexual abuse by Defendant Nassar.

465. Defendant USAG failed to implement reasonable safeguards to:

   a. Prevent acts of sexual assault, abuse, and molestation by Defendant Nassar; and,

   b. Avoid placing Defendant Nassar in positions where he would have unsupervised contact and interaction with Plaintiff and other young athletes.

466. As a direct and proximate result of the Defendant USAG's failure to train or educate, Plaintiff have suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

## COUNT XXIII
### NEGLIGENT RETENTION
### (Against Defendant USAG)

467. Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

468.    Defendant USAG had a duty owed to Plaintiff and others in Plaintiff's situation when credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising employees, agents, and/or representative to exercise due care.

469.    Defendant USAG breached the duties owed to Plaintiff by failing to adequately investigate, report, and address complaints about Defendant Nassar's conduct, which Defendant USAG knew or should have known.

470.    Defendant USAG breached the duties owed to Plaintiff when Defendant USAG retained Defendant Nassar as an employee, agent, and/or representative after Defendant USAG discovered or should have reasonably discovered Defendant Nassar's conduct, which reflected a propensity for sexual misconduct.

471.    Defendant USAG's failure to act in accordance with the standard of care resulted in Defendant Nassar gaining access to and sexually assaulting and/or sexually abusing Plaintiff and an unknown number of other individuals.

472.    The aforementioned conduct of Defendant USAG in credentialing, hiring, retaining, screening, checking, regulating, monitoring, and supervising Defendant Nassar created a foreseeable risk of harm to Plaintiff and other minors and young adults.

473.    Defendant USAG's retention of Defendant Nassar resulted in Plaintiff relying on such credentials as they sought medical treatment.

474.    As a direct and proximate result of the Defendant USAG's actions in retaining Defendant Nassar, Plaintiff has suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining

the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

### COUNT XXIV
### FRAUD AND MISREPRESENTATION
### (Against Defendant USAG)

475. Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

476. From approximately 1996 to summer 2015, Defendant USAG represented to Plaintiff and the public that Defendant Nassar was a competent, safe, and highly regarded physician.

477. By representing that Defendant Nassar was a team physician and an athletic physician at Defendant MSU and a National Team Physician with Defendant USAG, Defendant USAG represented to Plaintiff and the public that Defendant Nassar was safe, trustworthy, and of high moral and ethical repute and that Plaintiff and the public need not worry about being harmed by Defendant Nassar.

478. The aforementioned representations were false when they were made because Defendant Nassar had and was continuing to sexually assault, batter, molest, and harass unknown number of his patients and other individuals.

479. Additionally, complaints were made to Defendant USAG, yet Defendant USAG did not contact Plaintiff, the MSU Defendants, other individuals it had referred to Defendant Nassar, or any other clubs or organizations affiliated with Defendant Nassar to inform them of the allegations and potential harm to Plaintiff and others.

480. Defendant USAG continued to portray Defendant Nassar as a competent and safe physician, intentionally inducing Plaintiff and the public to rely on the reputation of

-94-

Defendant Nassar that Defendant USAG was perpetuating.

481.    Plaintiff relied on the assertions of Defendant USAG and sought medical treatment from Defendant Nassar while Defendant USAG knew of concerns and dangers.

482.    As a result of Plaintiff's and the public's reliance on Defendant USAG's fraudulent misrepresentation regarding Defendant Nassar, Plaintiff and others in Plaintiff's situation were sexually assaulted, abused, molested, and harassed by Defendant Nassar.

483.    Plaintiff was subjected to sexual assault, abuse, molestation, and harassment as a result of Defendant USAG's fraudulent misrepresentations regarding Defendant Nassar.

484.    As a direct and proximate result of the Defendant USAG's actions and knowingly false representations, Plaintiff has suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

## COUNT XXV
### NEGLIGENCE
### (Against Defendant Nassar)

485.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

486.    By seeking medical treatment from Defendant Nassar, a special, confidential, and fiduciary relationship between Plaintiff and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use ordinary care.

487.    Defendant Nassar owed Plaintiff a duty of ordinary care in carrying out

medical treatment.

488.    Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff in the course of and under the guise of rendering medical "treatment" was a breach of the duty to use ordinary care.

489.    As a direct and/or proximate result of Defendant's conduct, actions and/or inactions, Plaintiff has suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

## COUNT XXVI
### GROSS NEGLIGENCE
### (Against Defendant Nassar)

490.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

491.    Defendant Nassar owed the public and Plaintiff a duty to use due care to ensure safety and freedom from sexual assault, abuse, and molestation.

492.    By seeking medical treatment from Defendant Nassar, a special, confidential, and fiduciary relationship between Plaintiff and Defendant Nassar was created, resulting in Defendant Nassar owing Plaintiff a duty to use due care.

493.    Defendant Nassar's conduct in sexually assaulting, abusing, and molesting Plaintiff under the guise of rendering medical "treatment" was so reckless as to demonstrate a substantial lack of concern for whether injury would result to Plaintiff.

494. Defendant Nassar's conduct demonstrated a willful disregard for precautions to ensure Plaintiff's safety.

495. Defendant Nassars' conduct as described above, demonstrated a willful disregard for substantial risks to Plaintiff.

496. Defendant Nassar breached duties owed to Plaintiff and were grossly negligent when they conducted themselves by actions described above, said acts having been committed with reckless disregard for Plaintiff's health, safety, constitutional and/or statutory rights, and with a substantial lack of concern as to whether an injury would result.

497. As a direct and/or proximate result of Defendant Nassar's actions and/or inactions, Plaintiff has suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

498. In the alternative, the actions or inactions of Defendant Nassar were so reckless as to demonstrate a substantial lack of concern for whether an injury would result to Plaintiff and constitutes gross negligence that is the proximate cause of Plaintiff's damages. Plaintiff has suffered and continue to suffer pain and suffering, pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, loss of enjoyment of life, post-traumatic stress disorder resulting in physically manifested injuries including anxiety, depressions, sleep disorders, nightmares, psychological injuries, and physical

injuries. Plaintiff was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life, and have sustained and continue to sustain loss of earnings and earning capacity.

**COUNT XXVII**
**INVASION OF PRIVACY - INTRUSION**
**(Against Defendant Nassar)**

499.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

500.    Defendant Nassar intruded upon Plaintiff's seclusion or solitude by sexually assaulting, abusing, and molesting Plaintiff without the consent of Plaintiff or Plaintiff's parents.

501.    Plaintiff's genital areas, breasts, and sexual activity are secret and private subject matters.

502.    Plaintiff possessed a right to keep these subject matters private.

503.    Defendant Nassar's method of sexually assaulting, abusing, and molesting Plaintiff is objectionable to a reasonable person.

504.    As a direct and proximate result of Defendant Nassar's invasion of Plaintiff's privacy, Plaintiff has suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and loss of earning capacity.

## COUNT XXVIII
### MICHIGAN CHILD PROTECTION LAW - FAILURE TO REPORT CHILD ABUSE
### (Against Defendants Klages, Strampel, Kovan, and Stollak)

505.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

506.    Michigan's Child Protection Law, MCL 722.621 et seq., establishes mandatory reporting guidelines for suspected child abuse or neglect and provides penalties for failure to report child abuse or neglect.

507.    Specifically, MCL 722.623 provides in pertinent part:

> A physician, dentist, physician's assistant, registered dental hygienist, medical examiner, nurse, person licensed to provide emergency medical care, audiologist, psychologist, marriage and family therapist, licensed professional counselor, social worker, licensed master's social worker, licensed bachelor's social worker, registered social service technician, social service technician, a person employed in a professional capacity in any office of the friend of the court, school administrator, school counselor or teacher, law enforcement officer, member of the clergy, or regulated child care provider who has reasonable cause to suspect child abuse or child neglect shall make an immediate report to centralized intake by telephone, or, if available, through the online reporting system, of the suspected child abuse or child neglect.

MCL 722.623. [Emphasis added.]

508.    Child abuse is defined as "harm or threatened harm to a child's health or welfare that occurs through nonaccidental physical or mental injury, sexual abuse, sexual exploitation, or maltreatment, by a parent, a legal guardian, or any other person responsible for the child's health or welfare or by a teacher, a teacher's aide, or a member of the clergy." MCL 722.622(g).

509.    Child neglect is defined as "harm or threatened harm to a child's health or

welfare by a by a parent, a legal guardian, or any other person responsible for the child's health or welfare that occurs through either of the following: (i) Negligent treatment, including the failure to provide adequate food, clothing, shelter, or medical care. (ii) Placing a child at an unreasonable risk to the child's health or welfare by failure of the parent, legal guardian, or any other person responsible for the child's health or welfare to intervene to eliminate that risk when that person is able to do so and has, or should have, knowledge of the risk." MCL 722.622(k).

510.    Under MCL 722.633(1), "A person who is required by this act to report an instance of suspected child abuse or neglect and who fails to do so is civilly liable for the damages proximately caused by the failure."

511.    Defendants Klages, Strampel, Kovan, and Stollak were mandatory reporters during the time Defendant Nassar was engaged in child abuse or child neglect.

512.    As established in the allegations above, Defendants Klages, Strampel, Kovan, and Stollak had reasonable cause to suspect child abuse or child neglect.

513.    Defendant Klages, Strampel, Kovan, and Stollak failed to report any instances of suspected child abuse or neglect.

514.    Defendants Klages, Strampel, Kovan, and Stollak are or were employed by Defendants Michigan State University and Michigan State University Board of Trustees during the time Defendant Nassar was engaged in child abuse or child neglect, and were acting in the scope and course of their employment when they failed to report any instances of suspected child abuse or neglect.

515.    Defendants Klages, Strampel, Kovan, and Stollak are directly civilly liable for the damages proximately caused by their failure to report any instances of suspected child

abuse or neglect. Defendants Michigan State University and Michigan State University Board of Trustees are vicariously liable for said damages.

516.    As a direct and proximate result of Defendants' failure to report any instances of suspected child abuse or neglect, Plaintiff has suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and loss of earning capacity.

### COUNT XXIX
### VIOLATION OF CIVIL RICO – 18 U.S.C. §1961 *ET SEQ.*
### (Against all Defendants)

517.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

518.    Defendants formed an enterprise by virtue of their agency/relationships in the area of competitive gymnastics.

519.    Defendants engaged in repeated racketeering activity as defined under 18 U.S.C. § 1961 *et seq.* through activities including, but not limited to: sex trafficking of children by fraud in 18 U.S.C. § 1591, mail fraud 18 U.S.C. § 1341, and/or wire fraud 18 U.S.C. § 1343.

520.    Plaintiff were a target of Defendants' criminal enterprise.

521.    Defendants' enterprise also received benefit from Defendants' criminal activity.

522.    Defendants' conduct constitutes a pattern of racketeering activity (more than two acts) under 18 U.S.C. § 1961 *et seq.*

523.     Defendants' criminal enterprise created a financial benefit to each of the Defendants participating in their venture.

524.     Plaintiff was a victim of Defendants' criminal enterprise.

525.     As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1961 *et seq.*, Plaintiff has suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and loss of earning capacity.

526.     Plaintiff is entitled to treble damages and costs (including, but not limited to, attorney fees). See 18 U.S.C. § 1964(c).

### COUNT XXX
### CIVIL CONSPIRACY AND CONCERTED ACTION
### (Against all Defendants)

527.     Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

528.     Defendants engaged in concerted action.

529.     Defendants' concerted action was designed to accomplish either a criminal or unlawful purpose or a lawful purpose by criminal or unlawful means.

530.     As a direct and proximate result of Defendants' concerted action, Plaintiff has suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be

prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and loss of earning capacity.

COUNT XXXI
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(Against all Defendants)

531.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

532.    Defendants engaged in extreme and outrageous conduct.

533.    Defendants acted with intent or recklessness.

534.    As a direct and proximate result of Defendants' intentional infliction of emotional distress, Plaintiff has suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and loss of earning capacity.

COUNT XXXII
VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT – MCL 37.2101 ET SEQ.
(Against all Defendants)

535.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

536.    MCL 37.2101 et seq. prohibits sex discrimination based on sex (including, but not limited to, sexual harassment).

537.    Defendants are prohibited from sex discrimination/harassment under MCL 37.2101 et seq.

538.    Defendants, in a direct, agency, and/or representative capacity, engaged in sex discrimination/harassment with regard to Plaintiff.

539.    As a direct and proximate result of Defendants' sex discrimination/ harassment with regard to Plaintiff, Plaintiff has suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and loss of earning capacity.

### COUNT XXXIII
### ASSAULT AND BATTERY
### (Against Defendant Nassar)

540.    Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

541.    The acts committed by Defendant Nassar against Plaintiff described herein constitute assault and battery, actionable under the laws of Michigan.

542.    Defendant Nassar committed nonconsensual sexual acts, which resulted in harmful or offensive contact with the body of Plaintiff.

543.    Specifically, Defendant Nassar committed acts which caused injury to Plaintiff by subjecting them to an imminent battery and/or intentional invasion of their right to be free from offensive and harmful contact, and said conduct demonstrated that Defendant had a present ability to subject Plaintiff to an immediate intentional offensive and harmful touching.

544.    Defendant Nassar assaulted and battered Plaintiff by nonconsensual and

unwanted digital vaginal penetration, digital anal penetration, or touching of Plaintiff's breasts without notice or explanation of the "treatment."

545.    Plaintiff did not consent to the contact, which caused injury, damage, loss, and/or harm.

546.    As a direct and proximate result of Defendants' assault and battery, Plaintiff has suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earnings and loss of earning capacity.

### DAMAGES - FOR ALL AFOREMENTIONED CAUSES OF ACTION

547.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs.

548.    As a direct and/or proximate result of Defendants' actions and/or inactions stated above, Plaintiff has suffered and continue to suffer pain of mind and body, mental anguish, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, fright, grief, humiliation, enjoyment of life, was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life, and has sustained and continues to sustain loss of earning and loss of earning capacity.

549.    The conduct, actions and/or inactions of Defendants as alleged in the above stated counts and causes of action constitute violations of Plaintiff's constitutional and federal rights as well as the common and/or statutory laws of the State of Michigan, and the

United States District Court has jurisdiction to hear and adjudicate said claims.

550.    In whole or in part, as a result of some or all of the above actions and/or inactions of Defendants, Plaintiff has and continues to suffer irreparable harm as a result of the violations.

551.    The amount in controversy exceeds the jurisdictional minimum of $75,000.00.

WHEREFORE, Plaintiff requests this Court and the finder of fact to enter a Judgment in Plaintiff's favor against all named Defendants on all counts and claims as indicated above in an amount consistent with the proofs of trial, and seek against Defendants all appropriate damages arising out of law, equity, and fact for each or all of the above counts where applicable and hereby request that the trier of fact, be it judge or jury, award Plaintiff all applicable damages, including but not limited to compensatory, special, exemplary, punitive, and/or treble damages, in whatever amount the Plaintiff is entitled, and all other relief arising out of law, equity, and fact, also including but not limited to:

    a.    Compensatory damages in an amount to be determined as fair and just under the circumstances, by the trier of fact including, but not limited to medical expenses, loss of earnings, mental anguish, anxiety, humiliation, and embarrassment, violation of Plaintiff' constitutional, federal, and state rights, loss of social pleasure and enjoyment, and other damages to be proved;

    b.    Punitive, treble, and/or exemplary damages in an amount to be determined as reasonable or just by the trier of fact;

    c.    Reasonable attorney fees, interest, and costs; and

    d.    Other declaratory, equitable, and/or injunctive relief, including, but not limited to implementation of institutional reform and measures of accountability to ensure the safety and protection of young athletes and other individuals, as appears to be reasonable and just.

Respectfully submitted:

OLSMAN MACKENZIE PEACOCK & WALLACE, P.C.

_____
Donna M. MacKenzie (P62979)
Emily G. Thomas (P76638)
Attorneys for Plaintiff
2684 West Eleven Mile Rd.
Berkley, MI 48072
(248) 591-2300

Dated: September 7, 2018

## **JURY DEMAND**

NOW COMES Plaintiff, by and through her attorneys, OLSMAN MACKENZIE PEACOCK

& WALLACE, P.C., and hereby demands a jury trial on all claims set forth above.

Respectfully submitted:

OLSMAN MACKENZIE PEACOCK & WALLACE, P.C.

By: _____
Donna M. MacKenzie (P62979)
Emily G. Thomas (P76638)
Attorneys for Plaintiff
2684 West Eleven Mile Rd.
Berkley, MI 48072
(248) 591-2300
dmackenzie@olsmanlaw.com
ethomas@olsmanlaw.com

Dated: September 7, 2018